## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GLORIA COOKE                              *
                                         *
      Plaintiff,                        *
                                         *
v.                                       *     Case No. 8:18-cv-00205-TDC
                                         *
CARRINGTON MORTGAGE SERVICES   *
                                         *
      Defendant.                        *

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff, Gloria Cooke, by undersigned counsel, files her Opposition to Defendant Carrington Mortgage Services, LLC ("CMS") Motion to Dismiss First Amended Complaint. In support of her Opposition, the Plaintiff states the following:

### SUMMARY

Plaintiff filed a detailed 18 page amended complaint that detailed Plaintiff's factual and legal claims against the Defendant. Despite the thoroughness of Plaintiff's amended complaint, the Defendant filed its instant Rule 12(b)(6) motion to dismiss that claims the amended complaint is conclusory and lacks factual support. The motion has no merit and is totally inappropriate. Rather than challenging the legal sufficiency of the amended complaint, as required in a Rule 12(b)(6) motion, the Defendant challenges the merits of Plaintiff's allegations, ignores Plaintiff's allegations and/or asserts its own allegations in contrast to Plaintiff's allegations. In fact, it is the Defendant's motion that is conclusory as it seeks dismissal of Plaintiff's entire complaint without addressing numerous claims of the Plaintiff. Defendant's

motion is essentially an inadequately supported motion for summary judgment titled as a motion to dismiss.

I.      **PLAINTIFF'S FDCPA CLAIMS ARE SUFFICIENTLY ALLEGED AND SHOULD NOT BE DISMISSED.**

Defendant seeks dismissal of Plaintiff's FDCPA claims on the following bases: (1) the FDCPA claim is an impermissible end run around state foreclosure law, and (2) the Plaintiff's allegations lack factual support.

### A.  Plaintiff's FDCPA Claim Does Not Attack The State Foreclosure Action.

#### 1.  The FDCPA Supplements State Laws And Must Be Contemporaneously Complied With.

The FDCPA was enacted for the express purpose of expanding the consumer's right *beyond* those of the existing state statutes. 15 U.S.C.A. § 1692(a), (b).[1] Accordingly, courts have found that a debt collector must comply with both FDCPA and state consumer laws. *See Goodrow v. Friedman*, 788 F.Supp.2d 464, 471 (E.D. Va. 2011) (holding "[t]he Court cannot conclude that the defendants were exempt from the requirements of federal law simply because they attempted to comply with state law") citing *Romea v. Heiberger & Associates*, 163 F.3d 111, 118-19 (2nd Cir. 1998) (a law firm had to comply with certain FDCPA provisions when it sent a

---

[1]FDCPA is meant to be more expansive than other federal and state law. 15 U.S.C.A. § 1692(a), (b). ("There is abundant evidence of abusive, deceptive and unfair debt collection practices by many debt collectors.... Existing laws and procedures for redressing these injuries are inadequate to protect consumers."). The legislative history echoes these purposes and concerns. S.Rep. No. 95-382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1697 ("The committee believes that the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws make this legislation necessary and appropriate").

tenant a three-day rent demand notice required under state law) (§1692n required state law to yield if it conflicted with provisions of the FDCPA).

To that point, courts routinely have found that a debt collector can be held liable for FDCPA violations that occurred in a state court action. *See also Williams v. Javitch, Block, & Rathbone, LLC.*, 480 F.Supp.2d 1016, 1022-23 (S.D. Ohio 2007) (finding the plaintiff had stated a claim under §1692e(10) when he alleged the defendant law firm knew or should have known a state court collection suit was based on a false affidavit); *see Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (misrepresenting the amount of the debt owed is deemed a deceptive practice) (alleging that attaching false documents to a complaint or making false claims regarding the debt are claims under 15 U.S.C. §1692e(10)); and *see Delawader v. Platinum Financial Services Corp.*, 443 F.Supp.2d 942, 947-48 (S.D. Ohio 2005) (holding that allegations that a debt collector filed a complaint to collect a debt and attached an affidavit to the complaint that allegedly misrepresented the amount of the debt or the debt collector's legal claim upon the debt stated a claim for violation of §1692e(2)).

Therefore, Defendant CMS was required to comply with Maryland state foreclosure law without violating Plaintiff's rights under the FDCPA. In other words, CMS' compliance with Maryland law does not absolve it from its obligations under the FDCPA. *Goodrow*, *supra* at 471 (defendants were *not* exempt from FDCPA because they attempted to comply with state law). Accordingly, Plaintiff's FDCPA claim *is* not cabined by Maryland foreclosure law and CMS can be liable for violating the FDCPA while fulfilling its obligations under Maryland foreclosure law. *See Javitch*, *supra* at 1022-23 (plaintiff stated a claim against debt collector for violating FDCPA in a state court collection action).

### 2. Plaintiff's FDCPA Claims Do Not Infringe Upon The State Court's Judgment.

Defendant mischaracterizes Plaintiff's complaint as being another stab at a Rule 14-211 motion to stay or dismiss or a challenge to the foreclosure action. *See* Def's MTD at 3-5. If Plaintiff's complaint sought injunctive relief, then maybe Defendant's motion would have merit. But Plaintiff's complaint does not seek an injunction or dismissal of Defendant's foreclosure action. *See* Id. at 5 ("[A]n 'opt-out' construction of Rule 14-211 would encourage debtors to circumvent Rule 14-211 and the mandate of *Bates* by simply seeking injunctive relief and dismissal of the foreclosure action by way of a 'counterclaim seeking injunction and dismissal.'"). Rather, Plaintiff's complaint merely seeks monetary damages for Defendant's violations for various state and federal statutes. In such circumstances, this Court has ruled that a litigant's complaint is not a challenge to the state's foreclosure action. *Senftle v. Landau*, 390 F.Supp.2d 463 (D. Md. 2005); *Credit Union Loan Source, LLC v. Wood*, 2014 WL 4801800 (D. Md. Sep. 19, 2014).

In *Senftle* this Court found that "[w]hen a FDCPA claim concerns collection activities, a FDCPA claim does not arise out of the transaction creating the debt … [and] … even if the Circuit Court correctly determined that the underlying debt was valid, Maryland rules of res judicata would not preclude Senftle from later seeking damages against creditors for illegally collecting that debt." *Id*. 390 F.Supp.2d at 469-70 citing *Green v. Ford Motor Credit Co.,* 152 Md. App. 32, 58–60 (2003) (stating that a FDCPA claim concerning the method of collecting debt does not arise out of the transaction creating that debt). In *Wood* this Court even found that a Plaintiff *may* file a federal action seeking to prevent [a] state court action from proceeding any

further, [if] she has not alleged that the state court's denial of her motion to dismiss, or any other state court ruling, has caused her any injury. *Id*. 2014 WL 4801800 at *3.[2]

Also, instructive is *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788 (D. Md. 2013). In *Currie* the issue before this court was whether state consumer statutes – MCDCA and MMFPA – were barred by the judgment in a state foreclosure action. Despite finding the plaintiffs' claims primarily arose out of the same series of transactions, the court found the claims were not barred because the relief sought was money damages and would not affect the foreclosure judgment. *Id*. at 802 ("Although Plaintiffs' claims mainly arise out of the same series of transactions underlying the foreclosure proceeding, it is, at a minimum, plausible that the relief that Plaintiffs request would not contradict or nullify any essential foundation of the foreclosure.).

A case from the U.S. District for Eastern District of Virginia is also instructive. In *Carter v. Countrywide Home Loans, Inc.*, 2008 WL 4167931 *4 (E.D. Va. Sep. 3, 2008), the court found the plaintiff's FDCPA claim was not barred by res judicata because two elements of res judicata – the relief sought and causes of actions – differed from the state foreclosure action. *Id*. 2008 WL 4167931 at *6 (The relief sought by Plaintiffs is not identical, for in the state court proceedings the Plaintiffs sought injunctive relief, whereas in the present action, Plaintiffs seek monetary damages. An injunction preventing a home foreclosure is legally distinct from claims seeking monetary damages under federal statutes. Additionally, the causes of action asserted are not identical. In the proceedings before this Court, Plaintiffs raise claims pursuant to RESPA, which

---

[2] In *Wood* the defendant moved for dismissal based on the *Rooker-Feldman* doctrine, which bars federal courts from reviewing state court judgments. Id. 2014 WL 4801800, at *3. In *Wood*, just as here, the state court denied the plaintiff's motion to dismiss the foreclosure action and the bank argued the FDCPA "action [wa]s actually a collateral attack on the state court order denying Wood's motion to dismiss." Id.

Plaintiffs did not raise in the previous state court proceedings, and under the FDCPA, which was raised, but not adjudicated in the state court action.")

### 3. Plaintiff's FDCPA Claim Relating To Defendant's Authority To Foreclose Was Not Known And Ripe When Plaintiff Filed Her Motion To Dismiss The Foreclosure Action.

Defendant argues the Plaintiff was required to assert any " 'known and ripe' challenges to the foreclosure 'through Maryland Rule 14-211's pre-sale injunctive relief apparatus.' " Def's MTD at 4 citing *Bates v. Cohn*, 417 Md. 309, 318 (2010). As an initial matter, the *Bates* opinion did not address a federal claim brought in a federal court asserting statutory violations for debt collection activities. Instead, the issue before the *Bates* court was whether the borrower could assert known and ripe defenses to a foreclosure action after the foreclosure sale. Importantly, *Bates* is applicable to foreclosure defenses. *Id*. at 328 (We hold only that, given the limitations of Rule 14–305 and our *Greenbriar* and *Wells Fargo* opinions, a homeowner/borrower ordinarily must assert known and ripe defenses to the conduct of a foreclosure sale prior to the sale, rather than in post-sale exceptions.). Rule 14-211 restricts a mortgagor's foreclosure defenses to challenging the "validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." Md. Rule 14-211(a)(3)(B).

Plaintiff's only FDCPA claim that relates to Defendant's right to foreclose is her claim that Defendant does not possess the original promissory note (the "Note"). However, Plaintiff's claim that the Defendant was not a "holder" of the Note was not "known and ripe" at the time of filing her motion to stay or dismiss. More particularly, Plaintiff's motion to stay and dismiss the foreclosure action was filed in November 2016, but the Plaintiff's claim did not become ripe until Plaintiff obtained an *unendorsed* copy of the Note from the Defendant on or about July 26, 2017. *See* FAC ¶66 ("CMS issued a response by letter dated July 26, 2017 ... address[ing] … she

needed a copy of the Note … The copy of the Note did not contain any endorsements on the Note and there was no allonge to the Note.").[3]

## B. Defendant's Motion To Dismiss Improperly Seeks Dismissal Of Several FDCPA Claims Without Asserting Any Bases For Dismissal.

The Plaintiff's First Amended Complaint ("FAC") alleges six provisions of the FDCPA were violated by Defendant CMS. *See* FAC ¶¶71-74 (asserting claims under §§1692e(2),(5),(10), 1692f(1),(6) and 1692g). More particularly, the Plaintiff alleges in her FAC that:

71.  Defendant CMS violated 15 U.S.C. §1692g by contradicting and/or overshadowing the Plaintiff's rights to dispute the debt.

72.  CMS violated §1692e(2),(5),f(1) by collecting and/or threatening to collect an inflated mortgage reinstatement amount and payoff amount, due in part, among other things, to charges and fees that were inflated, did not incur, were duplicative or redundant and excessive.

73.  CMS violated §1692e(10) by falsely representing to be in possession of the Note or an agent to the holder of the Note, falsely representing that the Note was endorsed by an authorized person representing the holder of the Note at the time of the endorsement and falsely representing a right to collect on the debt and foreclose on the Property.

74.  CMS violated §1692e(5),f(6) by threatening to sell Plaintiff's Property at a public auction when they had no legal right to sale the Property.

---

[3] Defendant attached a copy of the Note to its motion to dismiss. However, the Defendant's Note differs from the Note the Defendant provided to the Plaintiff in July 2017. Further, the Plaintiff disputes that the validity of the endorsements and the allonge.

The discrepancies in the versions of the Note emphasizes the need for Defendant to have produced the original Note upon Plaintiff's request. Due to Defendant's refusal to produce the original Note, the Plaintiff was in her right to file this instant claim. *See Suss v. JPMorgan Chase Bank, N.A.*, 2009 WL 2923122, *4 (D. Md. Sep. 10, 2009) ("Plaintiff relates that he repeatedly asked to inspect the original Note and Defendant responded by either ignoring that request .. or simply stating, without explanation or authority, that 'Chase is not obligated to provide you with the original Note'…. There is little else that Plaintiff could have done, short of filing suit, to discover if Defendant is in possession of the original Note."). Indeed, Plaintiff had an affirmative obligation to ensure that Defendant was the holder of the Note. *See Jackson v. Brandywine*, 180 Md. App. 535, 564 (2008) (borrower is obligated to "endeavor to ascertain the proper payee before paying" and "had the right to request that [the person] establish [it]self as the proper payee.").

FAC ¶¶71-74. Defendant's motion to dismiss only addresses Plaintiff's §1692g claim. *See* Def's MTD at 6-7. Although Defendant's motion only addresses Plaintiff's 1692g claim, the Defendant seeks dismissal of Plaintiff's entire complaint, including claims that were *not* addressed in its motion. This is improper and Defendant's motion should be rejected out-of-hand with respect to Plaintiff's §§1692e(2),(5),(10) and 1692f(1),(6) claims.

### C. <u>Accepting Plaintiff's Allegations As True, Plaintiff Has Stated A Valid FDCPA, 15 U.S.C. §1692g Claim.</u>

The Defendant argues that Plaintiff's §1692g claims fail because the FAC fails to sufficiently allege how the Defendant's mortgage statement overshadowed Defendants prior notice, which provided Plaintiff's rights to dispute the debt. *See* Def's MTD at 6 ("While the Plaintiff makes naked assertions of overshadowing, she fails to allege with specificity how the language in the Second Letter overshadows the First Letter."). Contrary to the Defendant's arguments, the Plaintiff does sufficiently allege how the Second Letter overshadowed the First Letter. *See* FAC ¶¶31-32, which alleges:.

15.     On or about December 15, 2015, Plaintiff received official notice—Notice of Servicing Transfer ("Notice")—from CMS of the transfer of her mortgage loan from BOA to CMS.

16.     In the Notice, CMS apprised Plaintiff of her rights under the FDCPA to request verification or validation of the mortgage debt.

17.     Contained in the Notice was a description of Plaintiff's "Mini-Miranda" rights found in 15 U.S.C. §1692g(a), which stated, inter alia, that Plaintiff had thirty (30) days to request verification or validation of the debt.

18.     However, prior to the elapse of the 30 day period to request validation of the debt, on or about December 22, 2015, CMS sent Plaintiff a mortgage statement that demanded she pay $7,543.65 by January 1, 2016, which was well within Plaintiff's thirty day period to dispute the validity of the debt.

19.     The mortgage statement did not acknowledge the prior Notice or restate Plaintiff's right to dispute the amount of the debt. Furthermore, the mortgage statement did not alert Plaintiff that receipt of the monthly statement and its deadlines did not affect her right to dispute the debt.

20.     Plaintiff was confused by the conflicting documents and representations that she received from CMS. As a result, she believed the mortgage statement's demand for payment overrode or replaced the debt-validation Notice that CMS sent earlier.

21.     Furthermore, the mortgage statement warned that "[f]ailure to bring your loan current may result in fees and foreclosure — the loss of your home" and that "late payments, missed payments or other defaults on your account may be reflected in [your] credit report."

22.     Plaintiff interpreted these statements as threats of losing her home and adverse credit-report action if she did not pay the full amount demanded by the deadline, meaning that the thirty-day window was no longer in effect.

FAC ¶¶15-22. From the foregoing allegations, the court knows the (1) Plaintiff received notice of her rights to dispute the debt on or about December 15, 2015, *see* FAC ¶¶ 15-17; (2) Plaintiff received a mortgage statement on or about December 22, 2015, *see* id. ¶ 18; (3) the mortgage statement demanded payment of $7,543.65 by January 1, 2016, *see* id.; (4) mortgage statement threatened fees, foreclosure and derogatory credit reporting if Plaintiff did not pay, *see* id. ¶ 21; (5) mortgage statement did not acknowledge or restate Plaintiff's right to dispute the debt, *see* id. ¶ 19; and (6) Plaintiff was confused about her rights to dispute the debt and believed she had to pay the debt by January 1, 2016. *See* id. ¶¶ 20&22.

In *Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467 (N.D. Ill. Jul. 11, 2016), the Northern District of Illinois dealt with nearly identical situation. In *Lane*, the mortgage company, Bayview, sent a letter on October 14, 2015 that detailed the borrowers right to seek validation of the mortgage debt within thirty days. Id. at *1. "Two days later, on October 16, 2015, Bayview sent Lane a monthly mortgage statement … [threatening to assess] a $65.71 late fee

if Bayview received the $26,285.92 payment after November 16, 2015." Id. The *Lane* court found "[t]he demand for payment could confuse an unsophisticated consumer because the October statement fails to explain how the deadline and late fee reconcile with Lane's thirty-day right to dispute the debt. Id. at *8. The Court further found that mortgage statement's "warn[ing] that 'late payments, missed payments or other defaults may be reflected in [your] credit report.', [w]ithout a reconciling statement, [could cause] the unsophisticated consumer [t] interpret that warning as a threat of adverse credit-report action if the consumer did not pay up by the deadlines, meaning that the thirty-day window was no longer in effect." Id.

## II.     PLAINTIFF'S MCDCA CLAIMS ARE SUFFICIENTLY ALLEFGED AND SHOULD NOT BE DISMISSED.

Defendant seeks dismissal of Plaintiff's MCDCA claims on the following bases: (1) the FDCPA claim is an impermissible end run around state foreclosure law; (2) the Plaintiff's allegations lack factual support; and (3) the Plaintiff's failed to plead reliance, injury, or causation. *See* Def's MTD at 7-9.

### A.  Plaintiff's MCDCA Claim Does Not Attack The State Foreclosure Action.

#### 1.  Plaintiff's MCDCA Claims Do Not Infringe Upon The State Court's Judgment.

As noted above in Section I.A.2, Plaintiff's claims relating to the foreclosure action are not barred if the Plaintiff is not seeking to undue the foreclosure action. In *Currie*, this court rejected the assertion that the federal district is not the proper forum to bring challenges to the foreclosure process. *Id*. 950 F.Supp.2d at 800. In rejecting the lender's argument, the *Currie* court noted that "Plaintiffs had made clear that they did not bring the suit to unravel the foreclosure but rather to seek damages for alleged violations of various state statutes ..." *Id*.

Importantly, the *Currie* court found the claims were not barred despite finding the "plaintiffs' claims mainly arise out of the same series of transactions underlying the foreclosure proceeding." *Id*. at 802. In holding that the claims were not barred, despite challenging the foreclosure action, the *Currie* court reasoned the claims should not be barred because "it [wa]s, at a minimum, plausible that the relief that Plaintiffs request would not contradict or nullify any essential foundation of the foreclosure." *Id*.

Furthermore, under Maryland law, a litigant is permitted to bring an affirmative claim subsequent to the foreclosure action. *Id*. at 801 ("Under Maryland law, not all claims raised in a subsequent suit that arise out of the same transaction or series of transactions at issue in a prior suit are barred.") (citing *Rowland v. Harrison,* 320 Md. 223 (1990)).[4] "The Court of Appeals has recognized the applicability of this rule in the mortgage foreclosure proceeding context." *Id*. citing *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship,* 338 Md. 1, (1995).[5]

### 2. Plaintiff's MCDCA Claim Relating To Defendant's Authority To Foreclose Was Not Known And Ripe When Plaintiff Filed Her Motion To Dismiss The Foreclosure Action.

As noted above in Section I.A.3, Plaintiff's claims relating to the foreclosure action were not known and ripe in November 2016 at the time Plaintiff's motion to stay or dismiss was filed because Plaintiff did not receive a copy of the *unendorsed* Note until July 2017.

---

[4] In *Rowland,* the Court of Appeals of Maryland held that "where the same facts may be asserted as either a defense or a counterclaim, and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim." *Currie*, 950 F.Supp.2d at 801 quoting *Rowland*.

[5] "Although the *Fairfax Savings* court held that the plaintiff's subsequent claim was res judicata, it so held based on the conclusion that the allegations in the second suit contradicted and nullified an essential foundation of the foreclosure judgment." *Currie*, *supra* at 801 citing *Fairfax Savings*, 338 Md. at 31.

**B.** **Plaintiff's Has Sufficiently Alleged The Defendant Violated The MCDCA By Attempting To Collect On The Note When It Knew It Was Not Entitled To Collect On The Note.**

Defendant argues that Plaintiff's own allegations establish that the Defendant was entitled to collect on the Note. *See* Def's MTD at 7-8 (stating the Plaintiff allege she made or missed payments to Bank of America ("BOA") and alleged that BOA transferred the account to CMS). Based on the foregoing, the Defendant surmises "[i]f the Plaintiff defaulted on her mortgage loan, and if the mortgage loan was transferred to Carrington, then clearly Carrington had a right to collect on the debt." Id. at 8.

First, the Plaintiff has alleged that Defendant is not a holder of the Note. In other words, the Plaintiff has alleged that the Defendant is not in possession of a properly endorsed Note. *See* Md. Code Ann., Com Law §1-201(21). Plaintiff further alleged that because the Defendant is not the "holder", the Defendant cannot enforce the Note. *See* §3-301. The Defendant has not, and cannot, claim the Plaintiff has alleged the Defendant is in possession of the Note and entitled to enforce the Note. Plaintiff's allegation that she paid BOA and that BOA transferred the "account" to Defendant, do not establish that the Defendant is in possession of a properly endorsed Note and entitled to enforce the Note. To the contrary, the Plaintiff has alleged that the Defendant is not in possession of a properly endorsed Note and that the Defendant cannot enforce the Note. *See* FAC ¶¶58, 66, 73 & 79. In order for Defendant to have become a "holder" of the Note, the Note must have been physically transferred and endorsed from BOA to Defendant. *See* 3-201(a)&(b). There is no allegation in the FAC that alleges the Note was physically transferred and endorsed from BOA to Defendant. In fact, the FAC alleges that BOA was *not* the "holder," *see* FAC ¶30, and therefore, the Defendant did not become the holder by a transfer from BOA.

Furthermore, if BOA received Plaintiff 's payments despite not being the holder of the Note, the Plaintiff has a conversion claim against BOA. *See Busby v. Capital One, N.A.*, 932 F.Supp.2d 114, 145 (D.D.C. 2013) (finding that Busby's allegation that Capital One lacked authority to divert *or collect* funds supported a conversion claim of Busby's mortgage payments).

## C. **Plaintiff's Has Sufficiently Alleged The Defendant Violated The MCDCA By Attempted To Collect An Amount Of Debt That It Had No Right To Collect.**

The Defendant argues the MCDCA claim was alleged without factual support. *See Def's MTD at 7 ("At best, the Amended Complaint makes conclusory statements with no factual support."). This argument has no merit. In fact, immediately following Defendant's foregoing statement, the Defendant recites several factual allegations from the FAC. *See Id.* ("At best, the Amended Complaint makes conclusory statements with no factual support, such as '[t]he appraiser did not go into the Plaintiff's property, so the appraisal was a desktop appraisal, which costs between $75 and $200, and '[t]he [July 19 2016] appraisal fee was unnecessary because an appraisal had just been done in June 2016.'*Am. Compl.* at ¶42 and ¶47 respectively."). Accepting Plaintiff's allegations as true, the appraisal only cost $75 to $200 and it was unnecessary. Accordingly, the Plaintiff has sufficiently alleged the Defendant attempted to collect an amount it was not entitled to collect.

Moreover, the Defendant seeks dismissal of Plaintiff's entire MCDCA claim but only challenges Plaintiff's allegation that the appraisal fee was inflated, duplicated and excessive. In addition to the appraisal fee being inflated and excessive, the Plaintiff has alleged that "CMS has admitted to at least one double charge." FAC ¶66. Defendant's motion does not challenge this allegation, and therefore, the Defendant has proffered no basis for dismissal of such. Accordingly, the Plaintiff has asserted a valid MCDCA claim.

### D. **Plaintiff Has Sufficiently Alleged Damages.**

As for damages, the Defendant argues that "it is clear that the Plaintiff's own default is the proximate cause of the anxiety and stress associated with potentially losing the family home." Def's MTD at 8. As noted above, the FAC does not allege the Plaintiff's damages stemmed from her own default. Rather, the FAC alleges that Defendant's attempt to collect an illegal amount and threatening an illegal foreclosure, caused Plaintiff's damages. *See* FAC ¶¶78-80.

## III.    PLAINTIFF'S MCPA CLAIMS ARE SUFFICIENTLY ALLEFGED AND SHOULD NOT BE DISMISSED.

Defendant seeks dismissal of Plaintiff's MCPA claims on the following bases: (1) that Plaintiff fails to allege how the Defendant's responses were unreasonable, (2) fails to specifically identify the inquires that were not responded to within 15 days and (3) Plaintiff must plead an objectively identifiable injury. *See* Def's MTD at 10-11.

### A. **Defendant's Complete Failure To Respond To Plaintiff's December 22, 2016 and March 6, 2017 Letters Were A Violation Of MCPA.**

Although the Defendant claims that "[t]he Plaintiff is not specific as to which of her inquiries was not responded to within 15 days," Def's MTD at 10, the FAC clearly alleges that the Defendant did not respond *at all* to Plaintiff's letters dated December 22, 2016 and March 6, 2017.

> 54.    By letter dated December 22, 2016, Plaintiff requested, among other things, a certified copy of the Note and explanation of how the balance increased from $25,087.13 in December 2015 to $33,758 in August 2016.

> 55.    CMS did not acknowledge Plaintiff's letter dated December 22, 2016 and did not provide a response to her inquiries.

56.     By letter dated March 6, 2017, Plaintiff advised CMS that she wanted to pay any legitimate arrears on the loan but needed to inspect the original Note to verify that CMS was in possession of it. She added that a certified copy of the Note should be provided if CMS could not arrange for Plaintiff to inspect the Note within 15 days. Additionally, Plaintiff requested a chain of title for the Note that included identifying the date of any endorsements to the Note. In conclusion, Plaintiff requested a response within 15 days.

57. CMS did not acknowledge Plaintiff's letter dated March 6, 2017 and did not provide a response to her inquiry.

FAC ¶¶54-57. Accordingly, Defendant's failure to respond to Plaintiff's December 2016 and March 2017 inquiries were a violation of MCPA, 13-316(c).

> **B.   Defendant's Belated Response To Plaintiff's July 2, 2016, October 27, 2016 and April 29, 2017 Letters Were A Violation Of MCPA.**

Defendant argues that "[t]here is nothing in the [MCPA] that describes or defines what kind of response is acceptable, nor does the Plaintiff provide any factual enhancement whatsoever as to how Carrington's responses were unreasonable." Def's MTD at 10. First, the MCPA is a consumer protection statute and it should be construed liberally. *See* Md. Code Ann., Com. Law § 13–105 ("This title [MCPA] shall be construed and applied liberally to promote its purpose) noting that the MCPA is to be liberally construed to protect consumers."); and *see Robinson v. Nationstar Mortgage LLC*, 2015 WL 4994491, *3 (D. Md. Aug. 19, 2015) (noting that MCPA, §13-316 is to be liberally construed to protect consumers). A liberal construction of the MCPA requires the Defendant to make a reasonable response to Plaintiff's inquiries. Plaintiff has alleged, and it can be reasonably inferred, that Defendant's demand to have the letters signed by the Plaintiff—when no such requirement exists in MCPA, §13-316(c)(2)—was an unreasonable response.

Plaintiff has alleged she sent three letters that Defendant CMS unreasonably responded to by demanding the letters be signed.

> 37.    By letter dated July 2, 2016, Plaintiff Cooke notified CMS that …

> 38.    In response, CMS issued a letter dated July 12, 2016 that stated no response was forthcoming because Ms. Cooke's letter was not signed or the signature did not match their records. CMS returned Plaintiff's original letter and stated CMS requires her true signature on all written inquiries.

> 46.    By letter dated October 27, 2016, Plaintiff disputed the balance that CMS was reporting to Trans Union. Plaintiff also requested a loan payment history …

> 48.    In response, CMS issued a letter dated October 31, 2016 that stated no response would be provided because Ms. Cooke's letter was not signed or the signature did not match their records. CMS returned Plaintiff's original letter and stated CMS requires her true signature on all written inquiries.

> 62.    By letter dated April 29, 2017, Plaintiff stated the Reinstatement Notice and Payoff do not account for her payment of $2,280.52. …

> 63.    In response, CMS issued a letter dated May 10, 2017, that stated no response was forthcoming because Ms. Cooke's letter was not signed or the signature did not match their records. CMS returned Plaintiff's original letter and stated CMS requires her true signature on all written inquiries.

FAC ¶¶37,38,46,48,62 & 63. Accepting Plaintiff's allegations as true and making all inferences in favor of Plaintiff, the Plaintiff has sufficiently allege that "[o]n at least three occasions CMS failed to conduct a reasonable investigation of Plaintiff's letters because the dispute letter was not signed by the Plaintiff." Id. ¶93.

Next, the FAC does not even allege when CMS responded to any of Plaintiff's letters. Intead, the FAC *only* alleges the date that was placed on the letters. *See* FAC ¶¶38,48 & 63. Notably, the FAC further alleges that "CMS [has a] policy or procedure [] to date letters much earlier than the date the letters are actually mailed out." Id. ¶91. Therefore, it can be inferred that all of Defendant's letters were mailed after the 15-day time-period.

### C. **Plaintiff Has Sufficiently Alleged Damages.**

As for Defendant's argument that Plaintiff must "plead an "objectively identifiable" injury resulting from an MCPA violation, the Plaintiff has done such. More particularly, the Plaintiff has alleged "out-of-pocket costs, additional and unnecessary charges and costs on the loan, fear, worry, mental and emotional distress, some of which manifested as physical injuries, such as, headaches, stomach aches, eating and sleeping problems." FAC ¶86. The foregoing allegations of damages are sufficient to survive a motion to dismiss. *See Marchese v. JPMorgan Chase Bank,* 917 F.Supp.2d 452, 467-68 (D. Md. 2013) ("The instant case is similar to *Barry* and *Allen* in that Mr. Marchese pled that he suffered emotional and physical distress, including severe anxiety, depression, insomnia, and stomach pains, in addition to bogus late fees, attorney fees, and damage to his credit."); *Piotrowski v. Wells Fargo Bank, N.A.*, 2013 WL 247549, at *12 (D. Md. Jan.22, 2013) (noting that emotional distress in the form of anxiety and insomnia is sufficient); *Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, at *10 (D. Md. Aug.4, 2011) (finding that plaintiff's allegations of "damage to [her] credit score [and] emotional damages" sufficient to allege "an actual injury or loss as a result of a prohibited practice under the MCPA"); *Barry v. EMC Mortg. Corp.*, 2012 WL 3595153, *8 (D. Md. Aug. 17, 2012) ("The record reflects that Plaintiffs were assessed penalties in the form of Chase's demand for "$11,367.60 and all charges flowing from that demand," that Plaintiffs "lost credit opportunities as a result of Defendant's violation of the [MCPA]," and that they suffered "emotional distress.").

## IV.   **PLAINTIFF'S RESPA CLAIMS ARE SUFFICIENTLY ALLEFGED AND SHOULD NOT BE DISMISSED.**

Defendant seeks dismissal of Plaintiff's RESPA claims on the following bases: (1) the allegations of the FAC contradict her claims, (2) the Plaintiff's claims are conclusory, and (3)

Plaintiff's letters are not Qualified Written Requests ("QWR(s)") because they did not relate to servicing of her loan.

**A.   Plaintiff Has Sufficiently Alleged A RESPA, 12 U.S.C. 2605(e)(1)(A) Claim.**

Defendant argues that "[a]lthough the Plaintiff claims that Carrington violated RESPA by 'failing to acknowledge receipt of the Plaintiff's letter within 5 days' … the averments in the Amended Complaint say otherwise." Def's MTD at 11. Defendant further claims that Plaintiff only refers to one single but does not clarify which of the many letters between the Plaintiff and Carrington violated RESPA. *See* Id.

Despite Defendants claims to the contrary, the Plaintiff has clearly alleged that the Defendant failed to acknowledge and respond to Plaintiff's letters dated December 2016 and March 2017. *See* FAC 54-57. Plaintiff further alleges or it can be reasonably inferred from her allegations that most, if not all, of Defendant's responses were sent after the 5-day time period. Id. 91 (alleging the CMS has a policy to mail letters later (i.e. October 12th letter was mailed 5 days after October 12th) than the date of the letter).

**B.   Plaintiff Sufficiently Alleged A RESPA, 12 U.S.C. 2605(e)(2)(A)-(C) Claim By Alleging That The Defendant Violated RESPA By Failing To Investigate Her Letters Because They Did Not Contain A Signature.**

Defendant asserts that Plaintiff's claim "that Carrington 'failed to conduct a reasonable investigation of Plaintiff's letters because the dispute letter was not signed by the Plaintiff' … fails because it is conclusory." Def's MTD at 11. This argument has no merit. Nothing in the entire Act states that any correspondence from the borrower must be signed in order to be covered by RESPA. Therefore, it is patently unreasonable for the Defendant to require a signature from the Plaintiff before it fulfills its obligations under RESPA. *See Moon v. GMAC Mortg. Corp.*, 2009 WL 3185596, *4 (W.D. Wash. Oct. 2, 2009) ("Defendants assert that

plaintiff's letter dated September 7, 2007, is not a QWR because it is unsigned and does not state that the account is in error. Neither a signature nor an accusation of error, however, are requirements of a QWR.").

### C. **Plaintiff's Letters Were Covered Under RESPA As A QWR, Notice of Error ("NOI) Or Request For Information ("NOI").**

Defendant also argues that Plaintiff failed to "properly plead that her letter is covered under RESPA as a QWR requesting information relating to the 'servicing' of a loan." Def's MTD at 12. This argument has no merit. Plaintiff has alleged that "Plaintiff's letters contained her name and account number, was written on a piece of paper that was not from CMS, pertained to the loan or the servicing of the loan, and/or notified CMS of an error or requested information." FAC ¶89. These allegations alone are sufficient to establish the Plaintiff's letters were QWRs. *See* 2605(e)(1)(B)(ii); Reg. X, 12 C.F.R. 1024.31(a) (definition of QWR). Defendant's "conclusory" claim that "[t]he Plaintiff failed to allege that any of her letters related to payments she made pursuant to the terms of her loan" does not even attempt to explain how the content of Plaintiff's letters did not relate to servicing. *See* Def's MTD at 12. Moreover, since January 10, 2014 when the amendments to Regulation X sections 1024.35 and 1024.36 became effective, Plaintiff's written inquiries are no longer just limited to servicing. *See Tanasi v. CitiMortgage, Inc.*, 2017 WL 2837477, *21 (D. Conn. Jun. 30, 2017) ("A servicer's obligations to respond to RFIs are broader than its obligations under RESPA to respond to QWRs, in that a RFI does not need to relate to 'servicing.' Mortgage Servicing Rules, 78 FR 10696 at 10761 ('the final rule … does not limit information requests to those related to servicing')); *Joussett v. Bank of America, N.A.*, 2016 WL 5848898, *3 (E.D. Pa. Oct. 06, 2016) ("Section 1024.36(a) explicitly covers

more than just requests relating to loan servicing, extending to 'any written request for information from a borrower.'")

### D. Defendant's Motion To Dismiss Improperly Seeks Dismissal Of Several FDCPA Claims Without Asserting Any Bases For Dismissal.

The Plaintiff's First Amended Complaint ("FAC") alleges seven provisions of the RESPA were violated by Defendant CMS. *See* FAC ¶¶71-74 (asserting claims under 12 U.S.C. §2605(e)(1)(A), 12 U.S.C. §2605(e)(2)(A)-(C), §2605(e)(3), §2605(k)(1)(D), §2605(f),    12 C.F.R. §1024.35(e)(3)(i)(A), 12 C.F.R. § 1024.36(d)(2)(B)). More particularly, the Plaintiff alleges in her FAC that:

> 91. CMS violated 12 U.S.C. §2605(e)(1)(A) by failing to acknowledge receipt of Plaintiff's letter within 5 days. Upon information and belief, CMS policy or procedure is to date letters much earlier than the date the letters are actually mailed out. For instance, CMS letter dated October 12, 2017 was sent out on October 17, 2017.

> 92. CMS violated 12 U.S.C. §2605(e)(2)(A)-(C) by failing to take appropriate action, including conducting a reasonable investigation of Plaintiff's inquiry and correcting any errors that were reasonably discoverable, and conducting a reasonable investigation and providing the Plaintiff with her requested information or an explanation of why the information was not available.

> 93. On at least three occasions CMS failed to conduct a reasonable investigation of Plaintiff's letters because the dispute letter was not signed by the Plaintiff.

> 94. Upon information and belief, CMS had no reason to believe Plaintiff did not send the dispute letter to CMS.

> 95. CMS violated §2605(k)(1)(D) by failing to provide Plaintiff with the identity of the true owner of the loan within 10 business days of Plaintiff's request for such information.

> 96. CMS violated §2605(e),(f) by failing to respond within 7 days of Plaintiff's inquiry regarding payoff balance, loss mitigation options and foreclosure. See 12 C.F.R. § 1024.35(e)(3)(i)(A).

97. CMS violated §2605(f) by failing to provide information requested by the Plaintiff that was not overbroad or unduly burdensome as those documents were obtainable within 30 days of receiving Plaintiff's inquiry. See 12 C.F.R. § 1024.36(d)(2)(B).

98. CMS violated §2605(f) by failing to provide information requested by the Plaintiff that was not confidential or proprietary as the Plaintiff's requests did not seek information on the management or profitability of the servicer, compensation to the employees, and reports, investigations and borrower complaints.

99. CMS violated §2605(e)(3) by providing information to credit reporting agencies regarding delinquent and/or overdue payments owed by Plaintiff during the sixty (60) day period following CMS receipt of Plaintiff's qualified written requests. CMS reported derogatory information regarding the disputed payments to Equifax on July 27, 2016 and June 14, 2017, and to Trans Union on August 31, 2016 and June 2, 2017, which was within 60 days of Plaintiff's dispute letters dated July 2, 2016, March 6, 2017, April 7, 2017, April 29, 2017 and June 2, 2017.

100. Upon information and belief, CMS' conduct is not just limited to the Plaintiff, but CMS has committed similar violations against other borrowers of loans to which CMS services, and constitute a "pattern or practice" of noncompliance with the requirements of RESPA.

FAC ¶¶91-100. Defendant's motion to dismiss only addresses Plaintiff's 2605e(1) and 2605e(2) claims. *See* Def's MTD at 11-12 Although Defendant's motion only addresses Plaintiff's 2605e(1) and 2605e(2)  claims, the Defendant seeks dismissal of Plaintiff's entire complaint, including claims that were *not* addressed in its motion. This is improper and Defendant's motion should be rejected out-of-hand with respect to Plaintiff's §2605(e)(3), §2605(k)(1)(D), §2605(f), §12 C.F.R. §1024.35(e)(3)(i)(A), 12 C.F.R. § 1024.36(d)(2)(B) claims.

## V.      PLAINTIFF'S FCRA CLAIMS ARE SUFFICIENTLY ALLEFGED AND SHOULD NOT BE DISMISSED.

Defendant seeks dismissal of Plaintiff's FCRA claims on the basis that the FAC does not provide "specifics as to what was reported by the credit bureaus or what was disputed by the Plaintiff." Def's MTD at 12. With respect to Plaintiff's FCRA claims, the relevant allegations

are: (1) the Plaintiff alleged or can be inferred the reported account status, account balance, and monthly statement amount were inaccurate, FAC 46, 107 and *see* FAC *generally*; (2) the Plaintiff disputed the account status, account balance, and monthly statement amount, Id. 105-07 and the Defendant failed to conduct a reasonable investigation. Id. 109-112. "[T]o bring a claim under §1681s–2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to [reasonably] investigate and modify the inaccurate information." *Alston v. Wells Fargo*, 2013 U.S. Dist. LEXIS 33860, *10 (D. Md. Mar. 12, 2013) (citations omitted). The foregoing allegations sufficient satisfy Plaintiff's pleading requirements.

Plaintiff further alleges that Defendant failed to notate the account as disputed after receiving Plaintiff's dispute. Id. 109, 113 and 116. Thus, Plaintiff has alleged a sufficient FCRA claim. *See Cole v. FNMA*, 2017 WL 623465, *10 (D. Md. Feb. 14, 2017) ("Here, Plaintiff disputes the accuracy of the reporting and has adequately pleaded that Defendants violated 1681s-2(b) by failing to notate that her debt was disputed. Indeed, such a decision to report the debt without mention of a dispute could be "misleading in such a way to such an extent that it can be expected to have an adverse impact." *Saunders v BB&T*, 526 F.3d 142, 150 (4th Cir. 2008). Accordingly, the Plaintiff has stated a FCRA claim.

## VI.    CONCLUSION.

For the foregoing reasons the Plaintiffs request this Court DENY Defendant 's Motion to Dismiss. If the Court is inclined to grant any portion of the Defendants' Motion to Dismiss, then the Plaintiff requests leave to amend to address the specific findings and issues the Court finds lacking.

Respectfully submitted,

LOBATO LAW LLC


_____/s/_____

Quinn Breece Lobato,
Lobato Law LLC
8583 Seasons Way
Lanham, MD 20706
Tel: (240) 305-4770
E-mail: quinn.lobato@gmail.com
*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

On this 15th day of June, 2018, a copy of the foregoing was served on:


Thomas J. Gartner
SHAPIRO & BROWN, LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
*Counsel for Carrington Mortgage Services*

_____/s/_____

Quinn Breece Lobato,
Lobato Law LLC
8583 Seasons Way
Lanham, MD 20706
Tel: (240) 305-4770
E-mail: quinn.lobato@gmail.com
*Counsel for Plaintiff*