# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GLORIA COOKE,

    Plaintiff,

    v.

CARRINGTON MORTGAGE SERVICES,

    Defendant.

Civil Action No. TDC-18-0205

## MEMORANDUM OPINION

Plaintiff Gloria Cooke has filed this action against Carrington Mortgage Services ("Carrington") alleging various federal and state statutory violations in connection with Carrington's servicing of Cooke's mortgage loan. Pending before the Court is Carrington's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having reviewed the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For purposes of the Motion, the Court accepts the facts asserted in Cooke's Amended Complaint.

In May 2003, Cooke obtained a mortgage loan from Countrywide Home Loans, Inc., ("Countrywide"). The loan was later assigned to Bank of America ("BOA"). After Cooke missed payments or made late payments on her loan in 2014, BOA sent a Notice of Intent to Foreclose to Cooke on July 16, 2014. In the ensuing months, Cooke and BOA tried but failed to negotiate a

loan modification agreement. Then, in December 2015, BOA transferred Cooke's mortgage account to Carrington, a loan servicer. According to BOA, Cooke's mortgage loan was in default at the time of the transfer.

On or about December 15, 2015, Cooke received an official Notice of Servicing Transfer from Carrington. Also contained in the Notice was a description of Cooke's rights under the Fair Debt Collection Practices Act, including that Cooke had 30 days to request verification or validation of the debt. A week later, on December 22, 2015, Carrington sent to Cooke a Notice of Intent to Foreclose, which was accompanied by a letter stating that Cooke's loan could be accelerated and sold at a foreclosure sale if Cooke failed to cure the default within 45 days.

On February 10, 2016, Shapiro & Brown, LLP ("S&B") sent a letter to Cooke stating that it had been retained by Carrington to enforce the deed of trust; that as of February 9, 2016, the debt was $25,045.69; that the creditor for the mortgage loan was BOA; and that it would cease foreclosure activities if Cooke disputed the debt. The next day, February 11, 2016, Carrington retained S&B as the substitute trustee in order to enforce the deed of trust. In the absence of any communication from Cooke disputing the debt, S&B filed an Order to Docket Foreclosure on March 7, 2016. Five days later, on March 12, 2016, Cooke sent S&B a letter disputing the debt and requesting that it be verified. In response, S&B sent a letter to Cooke dated April 12, 2016 accompanied by a copy of the Promissory Note, a copy of the Deed of Trust, a copy of the Assignment of Deed of Trust and a Statement of Debt identifying the payoff amount as $29,489.31.

Carrington continued to service Cooke's mortgage loan after S&B filed the Order to Docket Foreclosure. Between July 2016 and August 2017, Cooke sent several written inquiries to Carrington regarding her mortgage loan. Specifically, Cooke sent letters to Carrington on July 2, 2016, October 27, 2016, December 22, 2016, March 6, 2017, April 6, 2017, April 29, 2017, June

12, 2017, and August 24, 2017. In all but the October 2016 and March 2017 letters, Cooke disputed various charges that appeared in her mortgage statements from Carrington and requested information about the charges in her letters. In addition, in her letters dated July 2, 2016, October 27, 2016, March 6, 2017, April 6, 2017, and August 24, 2017, Cooke requested information regarding the Note and asked that Carrington provide her with a certified copy of the Note. Cooke also challenged Carrington's ability to enforce the Note in her letters dated April 6, 2017 and August 24, 2017. Carrington responded to some of Cooke's inquiries but failed to respond to others. Cooke was not satisfied with Carrington's responses to her multiple inquiries and with its overall servicing of her loan.

On December 19, 2016, Cooke filed the present case in the Circuit Court for Prince George's County, Maryland, which Carrington timely removed to this Court. In her Amended Complaint, Cooke alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2012); the Maryland Consumer Debt Collection Practices Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14–201 to 14–204 (West 2010); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–101 to 13–501; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012); and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

## DISCUSSION

In its Motion to Dismiss, Carrington argues that (1) the ongoing state foreclosure proceeding bars Cooke's FDCPA and MCDCA claims; (2) the FDCPA claims should be dismissed because Cooke makes only conclusory allegations without factual support; (3) the MCDCA claims should be dismissed because Cooke fails plausibly to allege that Carrington did not have a right to collect on the Note; (4) the MCPA claims should be dismissed because Cooke fails to allege

sufficiently a violation of the provision of the MCPA requiring a response to written complaints within 15 days, including by failing to plead an actual injury or loss; (5) the RESPA claims should be dismissed because Cooke fails plausibly to allege that her letters constituted Qualified Written Requests such that RESPA's requirements were triggered; and (6) the FCRA claims should be dismissed because Cooke fails plausibly to allege a violation of the FCRA.

## I.      Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Legal conclusions or conclusory statements do not suffice. *Id.*   The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.      The State Foreclosure Proceeding

Carrington first argues that Cooke's FDCPA and MCDCA claims must be dismissed because they contest the right to foreclose, in circumvention of the exclusive state court foreclosure process and state law rules governing such challenges. *See* Md. R. 14-211.   This argument fails because Cooke's FDCPA and MCDCA claims do not seek injunctive relief barring foreclosure; rather they seek damages relating to the manner in which Carrington attempted to collect the debt owed by Cooke.   "When a[n] FDCPA claim concerns collection activities, a[n] FDCPA claim does not arise out of the transaction creating the debt." *Senftle v. Landau,* 390 F. Supp. 2d 463, 469–70 (D. Md. 2005) (holding that an FDCPA claim "pertaining to the manner in which [the defendant]

collected [the] debt" was not an appeal of the state court determination that the plaintiff owed the underlying debt). *See also Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015) (holding that the lenders' claim on the underlying mortgage was not a compulsory counterclaim in the debtor's FDCPA action because an FDCPA claim "raises different issues of law from those that a foreclosure action would present" and "does not focus on the validity of the debt, but instead on the use of unfair methods to collect it") (citations omitted); *Peterson v. United Accounts, Inc.,* 638 F.2d 1134, 1136-37 (8th Cir. 1981) (holding that an FDCPA claim, which is brought to enforce federal policy regulating debt collection practices, is not a compulsory counterclaim to a debt collection action). Accordingly, the FDCPA and MCDCA claims are distinct from foreclosure claims and are properly before the Court.

### III. FDCPA

In Count One of the Amended Complaint, Cooke alleges that Carrington committed multiple violations of the FDCPA, including violations of 15 U.S.C. §§ 1962e, 1692f, and 1692g. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 135 (4th Cir. 1996). To state a claim under the FDCPA, Cooke must allege that (1) she has been the object of collection activity arising from consumer debt; (2) Carrington is a debt collector as defined by the FDCPA; and (3) Carrington has engaged in an act or omission prohibited by the FDCPA. *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citations omitted); *see also Levins v. Healthcare Revenue Recovery Grp. LLC,* 902 F.3d 274, 280 (3d Cir. 2018). Carrington does not dispute the first two elements and instead argues generally that Cooke "makes conclusory statements without factual

support" and thus fails to allege sufficient facts to demonstrate that it engaged in conduct prohibited by the FDCPA.

### A.    Section 1692g

The only alleged FDCPA violation against which Carrington offers a specific argument is Cooke's claim that Carrington violated 15 U.S.C. § 1692g by contradicting or overshadowing her rights to dispute the debt.   Section 1692g provides that a debt collector must disclose certain information in its initial communication to a debtor or within five days of that communication.  15 U.S.C. § 1692g.  Specifically, a debt collector must send the consumer a written debt validation notice containing the amount of the debt, the name of the creditor to whom the debt is owed, and "[a] statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a).  To prevent debt collectors from engaging in collection practices that might confuse debtors about their debt validation rights, § 1692g also bars sending a technically compliant notice, but then "overshadowing" it with other communications:  "Any collection activities and communication during the 30-day [validation] period may not overshadow or be inconsistent with the disclosure of the [debtor's] right to dispute the debt." *Id.* § 1692g(b). Collection activities "overshadow[] or contradict[] the validation notice 'if [they] would make the least sophisticated consumer uncertain as to her rights.'" *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 521 (D. Md. 2013) (quoting *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir. 2010)).

As the basis for this claim, Cooke relies on two letters she received from Carrington, on December 15, 2015 and December 22, 2015.   Specifically, Cooke alleges in the Amended Complaint that the December 15, 2015 letter, which informed her that the mortgage loan had been

transferred from BOA to Carrington, included a statement of Cooke's rights under the FDCPA, including that she had 30 days to request verification or validation of the debt. However, in the December 22, 2015 letter, Carrington sent Cooke a mortgage statement that demanded that she pay $7,543.65 by January 1, 2016, which was within that 30-day period. The mortgage statement warned that "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home" and that "late payments, missed payments or other defaults on your account may be reflected in [your] credit report." Am. Compl. ¶ 21, ECF No. 21. The December 22, 2015 letter did not reference the December 15, 2015 letter or otherwise explain how its January 1, 2016 payment deadline was reconciled with the 30-day deadline to request verification of the debt.

Cooke's allegations are sufficient to state an overshadowing claim under §1692g because Carrington's December 22, 2015 letter would, at a minimum, make the least sophisticated consumer uncertain of the right to dispute the debt. *See Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 991-92 (9th Cir. 2017) (finding that a demand for payment 35 days from the *date* of the letter containing the verification notice overshadowed the right to dispute the debt for 30 days after *receipt* of the letter, as the 35-day deadline could expire before the statutory 30-day deadline); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35-36 (2d Cir. 1996) (finding that the plaintiff stated a claim under §1692g where, 20 days after the defendant sent the plaintiff a debt validation notice, it sent another notice demanding payment before the end of the 30-day period to dispute the debt). Carrington's claim that dismissal is warranted because Cooke's failed to attach the letters to the Amended Complaint is unpersuasive. Although discovery may reveal the exact language of the letters and potentially allow for specific arguments against liability, the Court accepts Cooke's pleaded facts for purposes of a motion to dismiss. The Court will therefore deny the Motion as to the §1692g claim.

**B.      Section 1692e**

Although Carrington makes no specific argument against Cooke's claim that Carrington violated 15 U.S.C. § 1692e, the Court considers whether the allegations relating to this provision are sufficient to state a plausible claim for relief.  Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  In assessing whether a communication is "false, misleading, or deceptive," courts consider how it would be interpreted by the "least sophisticated consumer." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136).  A misrepresentation must also be "material" to violate § 1692e.  *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014).  "The materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that may frustrate a consumer's ability to intelligently choose his or her response."  *Id.* (citations omitted).

Cooke specifically alleges violations of 15 U.S.C. § 1692e(2), (5), and (10).  Section 1692e(2) prohibits the false representation of the "character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  15 U.S.C. § 1692e(2).  Cooke alleges that Carrington violated this provision by "collecting and/or threatening to collect an inflated mortgage reinstatement amount and payoff amount, due in part . . . to charges and fees that were inflated, did not incur, were duplicative or redundant and excessive."  Am. Compl. ¶ 72.  Specifically, Cooke alleges that she received a mortgage statement from Carrington in June 2016 that included a $380 charge for a Foreclosure Appraisal even though it only cost between $75 and $200.  Cooke also alleges that Carrington issued mortgage statements on July 18, 2016, August 18, 2016, and in October 2016 that included unnecessary property inspection and appraisal fees.  Furthermore, Cooke alleges that

the mortgage statement she received in April 2017 did not account for her previous payment of $2,280.52. Accepting Cooke's allegations as true, the Court finds that Cooke has stated a claim for a violation of § 1692e(2) for these overcharges. *See Powell*, 782 F.3d at 127 (finding that a mistaken overstatement of the amount owed by approximately $1,200, where the actual amount was $10,497, constituted a violation of § 1692e); *Block v. Seneca Mortg. Servs.*, 221 F. Supp. 3d 559, 586-87 (D.N.J. 2016) (finding that the plaintiff alleged a viable FDCPA violation when she claimed that she received statements from the defendant with erroneous information about the amount due, interest owed, and escrow amounts); *Daniel v. Select Portfolio Servs. LLC*, 159 F. Supp. 3d 1333, 1335-36 (S.D. Fla. 2016) (finding that a plaintiff had stated a claim for a violation of §1692e(2) where he alleged overcharging for the servicer's property inspection fees).

Cooke relies on these same mortgage statements to assert a violation of § 1692e(5), which protects consumers from a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The alleged overcharges in the mortgage statements, however, do not constitute actionable "threats" under § 1692e(5). As alleged, the mortgage statements were only informational in character and could not be interpreted by the least sophisticated consumer as threats to take legal action. *See Webster v. ACB Receivables Mgmt. Inc.,* 15 F. Supp. 3d 619, 636-37 (D. Md. 2014) (finding that a defendant's communications, including one that requested payment but contained no threat of further action, did not constitute threats of legal action under §1692e(5)); *see also Cohen v. Beachside Two-I Homeowners' Ass'n*, No. ADM-05-706, 2006 WL 1795140, at *11 (D. Minn. June 29, 2006) (holding that, even if a legally required notice of foreclosure contained an inaccurate statement of fees owed, it was "informational in character," and was not a "threat"), *aff'd*, 272 F. App'x 534 (8th Cir. 2008). Cooke nowhere alleges that the inflated mortgage statements contained language threatening any

adverse action, such as acceleration of her loan if she failed to pay the charges. Cooke therefore fails to state a claim for a violation of § 1692e(5) based on the mortgage statements from June 2016 to April 2017.

Cooke also alleges that Carrington violated § 1692e(5) by "threatening to sell Plaintiff's Property at a public auction when they had no legal right to [sell] the Property." Am. Compl. ¶ 74. Specifically, Cooke alleges that the December 22, 2015 mortgage statement she received from Carrington stated that "[f]ailure to bring your loan current may result in fees and foreclosure—the loss of your home," and that at the same time she received a Notice of Intent to Foreclose threatening that her "loan could be accelerated and sold at a foreclosure sale" if she "failed to cure the default within 45 days." *Id.* ¶¶ 21, 24. Such language could be construed by the least sophisticated consumer as a threat to sell the property after 45 days if she did not cure the default. However, Cooke has not plausibly alleged that such action "cannot legally be taken." 15 U.S.C.§ 1692e(5). In the Amended Complaint, Cooke acknowledged that she obtained a mortgage loan in 2003 and that she fell behind on her payments in 2014. Cooke does not allege any facts supporting a plausible inference that BOA, on whose behalf Carrington serviced the mortgage loan, did not have an enforceable security interest in Cooke's property. Indeed, Cooke's unsuccessful negotiations with BOA over a loan modification agreement illustrate that Cooke understood that BOA had rights associated with the property. The only fact alleged in support of BOA's lack of right to pursue foreclosure is Cooke's assertion that "BOA is not in possession of the original Note, and therefore BOA is not entitled to enforce the Note." Am. Compl. ¶ 30. It is well established, however, that possession of the original note is not required for a note holder to enforce its rights. *See* Md. Code Ann., Com. Law § 3–301 (West 2010) (providing that a "'[p]erson entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the

instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3–309 or § 3–418(d).”); *Anderson v. Burson*, 35 A.3d 452, 462 (Md. 2011) (applying section 3-301 to notes relating to mortgage loans). *See also Lewis v. McCabe, Weisberg & Conway, LLC,* No. DKC-13-1561, 2015 WL 1522840, at *6 (D. Md. Apr. 1, 2015) (stating that “Defendants are not required to present the original note to Plaintiff in order to enforce the note”); *Jones v. Bank of New York Mellon,* No. DKC–13–3005, 2014 WL 3778685, at *4 (D. Md. July 29, 2014) (“Under Maryland law, Defendant is not required to present the original ‘wet-ink’ Note to Plaintiffs in order to enforce the Note.”); *Harris v. Household Finance Corp.,* No. RWT-14-606, 2014 WL 3571981, at *2 (D. Md. July 18, 2014) (stating that “there is no recognizable claim to demand in an action brought by a borrower that the lender produce ‘wet ink’ signature documents”).

More broadly, Cooke’s claim, in essence, is that Carrington did not have the authority to initiate foreclosure proceedings because it did not produce adequate proof of its claim. However, courts have found that such allegations do not suffice to state a claim under § 1692e. *See Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 331-32 (6th Cir. 2006) (holding that filing a lawsuit without the immediate means of proving the debt owed did not constitute a deceptive practice under § 1692e); *Johnson v. BAC Home Loans Serv., LP*, 867 F. Supp. 2d 766, 781 (E.D.N.C. 2011) (“To the extent Plaintiffs’ allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim [because] insufficient evidence or documentation claims . . . do not constitute viable claims under section 1692e.”) (citations omitted). Cooke thus fails to state a claim against Carrington for a violation of § 1692e(5).

Cooke relies on similar conduct to assert a violation of § 1692e(10), which prohibits the "use of false representations or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Cooke alleges that Carrington violated § 1692e(10) by "falsely representing to be in possession of the Note or an agent to the holder, falsely representing that the Note was endorsed by an authorized person representing the holder of the Note, and falsely representing a right to collect on the debt and foreclose on the Property." Am. Compl. ¶ 73. This claim fails because Cooke does not plausibly allege that Carrington did not have a right to collect on the debt or that Carrington falsely represented a right to do so. According to Cooke's own allegations, Carrington notified Cooke as soon as her mortgage loan was transferred to it from BOA and informed her that her loan was in default. Cooke does not deny the existence of the underlying debt and does not allege that anything contained in the state court foreclosure complaint filed against her was false. Rather, Cooke's allegations suggest only that there was no adequate proof of the claim. As outlined above, however, courts have found that such allegations are insufficient to state a claim under §1692. *See Harvey,* 453 F.3d at 331-32 (affirming the dismissal of a plaintiff's § 1692e(10) claim where she alleged that the defendant filed a lawsuit to collect a debt without the means to prove the debt). Therefore, Cooke fails to state a claim for violation of § 1692e(10).

### C.  Section 1692f

Cooke also asserts FDCPA violations under 15 U.S.C. §§ 1692f(1) and (6). Section 1692f(1) prohibits "[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Section 1692f(6) prohibits, in relevant part, "[t]aking or threatening to take any nonjudicial action to effect dispossess or disablement of property if—(A) there is no present right to possession of the property

claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6). Significantly, however, courts have limited § 1692f's prohibitive reach to conduct that is "separate and distinct" from other FDCPA violations and thus dismiss § 1692f claims where a plaintiff fails to allege any misconduct beyond that which violates the other provisions of the FDCPA asserted in the complaint. *See, e.g., Lembach v. Bierman,* 528 F. App'x 297, 304 (4th Cir. 2013) ("[T]he courts use § 1692f to punish conduct that FDCPA does not specifically cover. Because the [Plaintiffs] rely on conduct that is covered by §1692e and do not allege any separate or distinct conduct to support a § 1692f violation, their claim fails for this reason as well."); *Foti v. NCO Fin. Sys., Inc*., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (dismissing the plaintiffs' claim for a violation of § 1692f because the complaint "does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA").

Cooke's claim for a violation of § 1692f(1) is identical to her claims for violations of § 1692e(2) and § 1692e(5). Specifically, Cooke alleges that Carrington violated § 1692f(1), § 1692e(2), and § 1692e(5) by "collecting and/or threatening to collect an inflated mortgage reinstatement amount and payoff amount." Am. Compl. ¶ 72. If true, such conduct is already covered by Cooke's § 1692e(2) and § 1692e(5) claims. Therefore Cooke's § 1692f(1) claim is dismissed.

Cooke's claim for a violation of § 1692f(6) fails for the same reason. That claim is premised on the same conduct that underlies her § 1692e(5) claim: "threatening to sell Plaintiff's Property at a public auction when they had no legal right to sell the Property." Am. Compl. ¶ 74. If true, such conduct would constitute a violation of § 1692e(5). Cooke's § 1692f(6) claim is therefore dismissed because she fails to allege any conduct not already prohibited by, and covered by, her § 1692e(5) claim.

Accordingly, the Motion will be denied as to Cooke's FDCPA claims under 15 U.S.C. § 1692e(2) and 1692(g) and granted as to her other FDCPA claims.

## IV.    MCDCA

In Count Two of the Amended Complaint, Cooke claims that Carrington violated section 14-202(8) of the MCDCA, which provides that "in the course of collecting or attempting to collect an alleged debt," a debt collector "may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14–202(8).  The "knowledge" requirement of the MCDCA has been held to mean "actual knowledge or reckless disregard as to the falsity of the information or the existence of the right."  *Spencer v. Hendersen-Webb, Inc*., 81 F. Supp. 2d 582, 595 (D. Md. 1999).

Cooke alleges that Carrington violated section 14-202(8) by "collecting, attempting to collect and/or claiming a right to collect and foreclose pursuant to the Note when Carrington knew it [was] not the holder nor an agent to the holder of the Note."  Am. Compl. ¶ 79.  Though Cooke makes the broad assertion that "Carrington knew it was not the holder of the Note" or an agent of the noteholder, she has offered no facts in support of this allegation.  *Id.*  Rather, Cooke alleges that Carrington notified her as soon as her mortgage was transferred to it from BOA and that, after Carrington retained S&B as the substitute trustee to enforce the deed of trust, S&B provided her a copy of the Promissory Note, Deed of Trust, and Assignment of Deed of Trust to verify the debt. Moreover, Carrington itself provided Cooke two copies of the Note.  Cooke's argument is premised on the claim that neither BOA or Carrington was in possession of the original Note containing all relevant endorsements.  As discussed above, however, such possession is not necessary to allow for proper collection of a debt.  *See supra* part III.B; *see, e.g.*, *Lewis,* 2015 WL 1522840, at *6 (stating that "Defendants are not required to present the original note to Plaintiff in

order to enforce the note"). Thus, where Cooke has not provided any other theory to support the claim that Carrington knew it was neither the note holder nor an agent of the note holder, she has not plausibly alleged that Carrington did not have authority to collect on the debt under the MCDCA. *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (dismissing the plaintiff's MCDCA claim where he conceded that he was in default on his mortgage loan and thus failed plausibly to allege that the defendant did not have a right to collect on the debt); *Stewart,* 859 F. Supp. 2d at 769-70 (same). As with her analogous FDCPA claims, Cooke's chief complaint appears to be that Carrington failed to show documentary proof of ownership of the debt. Such allegations, however, are insufficient to state a claim under the MCDCA. *See Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014) (dismissing an MCDCA claim where the plaintiff alleged that the defendant had filed a state court collection lawsuit without evidence to prove ownership of the debt).

Cooke also alleges that Carrington violated section 14-202(8) by "collecting, attempting to collect or claiming a right to collect charges and fees that were inflated, were not incurred, duplicative or redundant and excessive." Am. Compl. ¶ 78. Although the Court determined that such allegations are sufficient state a claim under the FDCPA, which is a strict liability statute, Cooke's allegations are insufficient to state an MCDCA claim because she has failed to allege "actual knowledge or reckless disregard" of the falsity of the charges. *Spencer,* 81 F. Supp. 2d at 595. *See also Akalwadi v. Risk Mgmt Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004) (noting that, unlike the FDCPA, the MCDPA requires that a defendant acted with knowledge or reckless disregard of the falsity of the information at issue). Nor has Cooke offered any facts plausibly showing such knowledge. When Cooke disputed various fees, Carrington responded by removing certain fees and providing an explanation as to others, such as that they were authorized

by the deed of trust. This response does not lead to the plausible inference that Carrington acted with knowledge or reckless disregard to the validity of the charges. *Cf. Cole v. Federal Nat'l Mortg. Ass'n*, No. GJH-15-3960, 2017 WL 623465, at *7-8 (D. Md. Feb. 14, 2017) (finding that a plaintiff had stated an MCDCA claim where she alleged that the defendant had assessed excessive and inflated charges to her account and knew that they lacked the right to collect those amounts). Therefore, Cooke fails to state a claim under the MCDCA.

## V.     MCPA

In Count Three, Cooke asserts that Carrington violated section 13-316(c) of the MCPA by failing to respond to consumer inquiries in a timely manner. That provision governs "mortgage servicing" and, among other requirements, provides that a "servicer shall designate a contact to whom mortgagors may direct complaints and inquiries" and that the "contact shall respond in writing to each written complaint or inquiry within 15 days if requested." Md. Code Ann., Com. Law § 13–316(c). Cooke alleges that she sent four written communications to Carrington in which she requested a response within 15 days. Because the 15-day deadline is only triggered upon explicit request, these are the only communications on which Cooke can rely to support her claim for a violation of section 13-316(c). *See* Md. Code Ann., Com. Law § 13–316(c)(2).

Regardless of whether Carrington's written responses to certain letters summarily rejecting them as unsigned would satisfy the statute's requirement, a review of Cooke's allegations reveals that at least two of those letters did not receive any response within 15 days: the letters dated March 6, 2017 and April 6, 2017. In her letter dated March 6, 2017, Cooke advised Carrington that she wanted to pay any legitimate arrears on the loan but requested that Carrington first verify that it was possession of the Note by providing her a chain of title and either a certified copy of the Note or an opportunity to inspect it. Then, in her letter dated April 6, 2017, in addition to

continuing to question the authenticity of the Note, Cooke requested an explanation of several fees and charges on her loan that appeared redundant. Viewing the Complaint in the light most favorable to Cooke, the Court finds that she plausibly alleges that Carrington failed to timely respond to these letters in violation of section 13-316(c)(2).

A private party bringing a cause of action under the MCPA must allege that "an actual injury or loss." *Lloyd v. General Motors Corp*., 916 A.2d 257, 277 (Md. 2007); *see Marchese v. JPMorgan Chase Bank, N.A*., 917 F. Supp. 2d 452, 467 (D. Md. 2013). Cooke alleges that as a result of Carrington's failure to timely respond to her inquiries, she endured "damages including out-of-pocket costs, additional and unnecessary charges and costs on the loan, fear, worry, mental and emotional distress, some of which manifested as physical injuries, such as headaches, stomach aches, eating and sleeping problems." Am. Compl. ¶ 86. Although section 13-316 provides a remedy only for economic damages arising from a mortgage servicer's failure to respond to an inquiry, *see* Md. Code Ann., Com. Law § 13–316(e), Cooke's allegations are sufficient to state a claim under the MCPA. *See Marchese,* 917 F. Supp. 2d at 468 (holding that the plaintiff sufficiently pleaded actual injury or loss under the MCPA where he alleged that he suffered "bogus late fees," damage to his credit, and attorney's fees); *see also Cole*, 2017 WL 623465, at *8 (holding that the plaintiff sufficiently pleaded damages under the MCPA where she alleged that the defendant's failures to respond "resulted in the continual assessment of accruing interest, fees and costs on the mortgage account," as well as "stress, physical sickness, headaches, sleep deprivation, worry, and pecuniary expenses").

Cooke also alleges that Carrington violated the MCPA when it violated the MCDCA. Although a violation of the MCDCA is a *per se* violation of the MCPA, *see* Md. Code Ann., Com. Law § 13–301(14)(iii), this Court has already determined that Cooke failed to state a claim for a

violation of the MCDCA. Accordingly, Cooke necessarily has failed to state a claim under the MCPA for the alleged MCDCA violation.

## VI. RESPA

In Count Four, Cooke asserts various violations of RESPA, which obligates mortgage loan servicers to disclose pertinent information to borrowers, attempt to correct errors in servicing, and respond to relevant questions from borrowers. *See* 12 U.S.C. § 2605. A servicer that fails to comply with § 2605 is liable for actual damages and, upon a finding of a "pattern or practice" of non-compliance by the servicer, up to $2,000 in statutory damages. 12 U.S.C. § 2605(f).

Cooke asserts that she sent multiple inquiries to Carrington between July 2016 and August 2017, and that Carrington's responses violated 12 U.S.C. §§ 2605(e), (f), and (k), as well as certain RESPA regulations, 12 C.F.R. §§ 1024.35 and 1024.36. Carrington argues that Cooke's RESPA claims must be dismissed because her communications to Carrington did not qualify as qualified written requests, and thus did not trigger RESPA's response requirements, because they did not relate to loan servicing.

### A. Qualified Written Requests

Under 12 U.S.C. § 2605, a mortgage loan servicer is required to respond in writing within five days to a communication from a borrower if the communication constitutes a "qualified written request" ("QWR"). *See* 12 U.S.C. § 2605(e)(1). RESPA defines a QWR as a written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A servicer is required to respond to a QWR from a borrower only to the extent that the QWR seeks "information relating

to the servicing of [a] loan." *See* 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Significantly, a communication from a borrower that includes multiple requests, some of which relate to the servicing of a mortgage loan and some of which do not, can still be considered a QWR for purposes of triggering the response requirements. *See Martins v. Wells Fargo Bank, N.A.,* No. CCB-16-1070, 2016 WL 7104813, at *3 (D. Md. Dec. 6, 2016); *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013). In such a case, the servicer need only respond to those requests that relate to the servicing of the loan. *Martins*, 2016 WL 7104813 at *4 (stating that RESPA's response requirements apply only to the qualifying requests); *see also Stewart v. Fed. Nat'l Mortg. Ass'n.*, No. AJT-13-11316, 2015 WL 5734859, at *3-4 (E.D. Mich. Sept. 30, 2015) (noting that the obligation to respond attaches only to those requests within a valid QWR that relate to the servicing of the loan).

Although Cooke did not attach the inquiries she sent to Carrington to the Amended Complaint, her allegations outline in detail the communications she sent to Carrington throughout the relevant time period. After a review of these allegations, the Court finds that Cooke plausibly alleges that she sent QWRs to Carrington. Specifically, Cooke sufficiently alleges that her letters dated July 2, 2016; October 27, 2016; December 22, 2016; April 6, 2017; April 29, 2017; June 12, 2017; and August 24, 2017 constituted valid QWRs. In each of those letters, Cooke either identified purported errors with her account or requested information regarding fees charged to her account and her interest charges. Although not all parts of these letters related to the servicing of

Cooke's mortgage loan, because some parts plainly address servicing, the letters qualify as QWRs requiring a response. *See, e.g.*, *Boardley v. Household Finance Corp. III,* 39 F. Supp. 3d 689, 701–02 (D. Md. 2014) (finding that a letter constituted a QWR where it asserted that the plaintiffs "made all their payments from April 2009 through July 2012 but [Defendants] did not credit the account"); *Pendleton*, 993 F. Supp. 2d at 1152 (holding that the plaintiff's letter constituted a QWR where it stated that the plaintiff disputed the amount owed based on unnecessary charges).

On the other hand, Cooke's letter dated March 6, 2017, in which she requested to inspect the original Note and to receive a chain of title, did not constitute a valid QWR because such requests do not relate to servicing. *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 418 (D. Md. 2018) (recognizing that requests for copies of loan documents, assignments of the deed of trust and note, property inspection reports, and appraisals do not relate to servicing and therefore do not constitute a valid QWR); *see also Mohamed v. Select Portfolio Servs., Inc*., 215 F. Supp. 3d 85, 98-99 (D.D.C. 2016) (holding that a plaintiff's requests for a payoff statement, a certified copy of the Note, and an opportunity to physically inspect the Note did not constitute requests related to servicing and thus did not qualify as a QWR). Nevertheless, because Cooke sufficiently alleges that she sent QWRs to Carrington, the Court will proceed to consider whether she has properly alleged violations of the response requirements.

### B. Failure to Acknowledge Receipt

Cooke first alleges that Carrington violated RESPA by failing to acknowledge receipt of Cooke's letters within five days. RESPA explicitly requires a loan servicer, upon receipt of a borrower's QWR, to provide a written response acknowledging receipt of the correspondence within five days. 12 U.S.C. § 2605(e)(1)(A) (excluding legal public holidays, Saturdays, and Sundays). Specifically, Cooke alleges that Carrington failed to timely acknowledge receipt of,

and failed to provide any response to, her QWRs dated December 22, 2016 and April 6, 2017. Thus, Cooke has sufficiently alleged a violation of this provision.

### C.  Failure to Take Appropriate Action in Response to QWRs

Cooke also alleges that Carrington failed to take appropriate action in response to Cooke's inquiries. RESPA requires that, within 30 business days after receipt of a QWR, the servicer must: (1) make corrections to the borrower's account; (2) after conducting an investigation, provide a written explanation stating the reasons the servicer believes the account is correct; or (3) conduct an investigation and provide the information requested by the borrower or an explanation of why the information is unavailable. 12 U.S.C. § 2605(e)(2).

Here, Cooke alleges that Carrington failed to provide such a response within 30 days as to her QWRs dated July 2, 2016, October 27, 2016, December 22, 2016, and April 29, 2017. Although Carrington asserts that it did not need to provide a substantive response to the letters dated July 2, 2016, October 27, 2016, and April 29, 2017 because Cooke had not signed them, there is no statutory requirement that a borrower sign a QWR, and at least one court has held that QWRs do not need to be signed. *See Moon v. GMAC Mortg. Corp.*, No. TSZ-08-969, 2009 WL 3185596, at *4 (W.D. Wash. Oct. 2, 2009) ("Neither a signature nor an accusation of error, however, are requirements of a QWR."). In any event, Cooke's allegation that Carrington did not provide any response to her letters dated December 22, 2016 and April 6, 2017 plainly states a RESPA claim for a breach of this provision. In light of this finding, the Court need not, and does not address at this time, whether Carrington's actual responses to other QWRs satisfied its obligations under 12 U.S.C. § 2605(e)(2).

### D. Other RESPA Allegations

Carrington does not directly dispute that Cooke has alleged violations of other RESPA provisions. For example, Cooke alleges in the Amended Complaint that Carrington violated the provision of RESPA that states "[d]uring the 60-day period beginning on the date of the servicer's receipt of a QWR relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or QWR, to any consumer reporting agency." 12 U.S.C. § 2605(e)(3). Cooke specifically alleges that her letters dated July 2, 2016, April 6, 2017, April 29, 2017, and June 12, 2017 constituted valid QWRs in which she disputed various payments and fees in her mortgage statements. Cooke further alleges that Carrington reported derogatory information regarding the disputed payments to Equifax on July 27, 2016 and June 14, 2017, and to Trans Union on August 31, 2016 and June 2, 2017. Because Cooke alleges that these reports were made within 60 days of Cooke's QWRs, she has sufficiently alleged a violation of this provision.

Likewise, Cooke has sufficiently alleged that Carrington violated the RESPA provision requiring that "[a] servicer of a federally related mortgage shall not . . . fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D). In the Amended Complaint, Cooke alleges that she requested the history of ownership of the loan and the identity of the person or entity currently in possession of the original note in an October 27, 2016 letter to Carrington, but that Carrington failed to respond to this request until November 28, 2016. These allegations state a claim for a violation of § 2605(k)(1)(D).

Where the Court has rejected Carrington's arguments for dismissal of the RESPA claims and concluded that Cooke has sufficiently alleged multiple violations of RESPA, and Carrington

has provided no specific arguments for dismissal of any particular RESPA claim, the Court need not and does not address at this stage whether any other specific RESPA allegations, including Cooke's claims that Carrington violated RESPA's implementing regulations, 12 C.F.R. § 1024, state a plausible claim for relief. The Motion will be denied as to the RESPA claims in Count Four.

## VII. Fair Credit Reporting Act

In Count Five, Cooke alleges that Carrington violated the FCRA by failing to fully and properly investigate and respond to Cooke's disputes raised with consumer reporting agencies. Carrington argues that Cooke fails to allege a plausible claim that it violated the FCRA.

The FCRA creates a duty for furnishers of credit information to provide accurate information to consumer reporting agencies ("CRAs"). 15 U.S.C. § 1681s-2(a). When a furnisher receives notice from a CRA that the consumer disputes the completeness or accuracy of information provided to a CRA, the furnisher "shall conduct an investigation with respect to the disputed information" and report the results to the CRA. 15 U.S.C. § 1681s-2(b)(1); *see also id.* § 1681i(a)(2)(A) (requiring a CRA to, within five business days, provide notice of a consumer's dispute to the furnisher). If the investigation reveals that the disputed information is incomplete, inaccurate, or cannot be verified, the furnisher must modify or delete that item of information. 15 U.S.C. § 1681s-2(b)(1).

In support of her FCRA claim, Cooke alleges that she sent dispute letters to Equifax, Experian, and Trans Union on July 2, 2016 and in August 2016, September 2016, and May 2017. Cooke further alleges that each of these CRAs forwarded notice of Cooke's disputes to Carrington, and that Carrington failed to correct its reporting and did not even document that Cooke had filed the disputes. Cooke also alleges that Carrington either did not conduct a reasonable investigation

of Cooke's disputes or failed to report accurately the results of its investigation to the CRAs, and that it failed to modify or delete inaccurate information.

Because Cooke alleges that she sent dispute letters to the CRAs, Cooke sufficiently alleges that Carrington's duty to investigate under § 1681s-2(b) was triggered. *See White v. Green Tree Serv., LLC*, 118 F. Supp. 3d 867, 874-75 (D. Md. 2015) (holding that a plaintiff triggers a furnisher's duty to investigate by notifying the CRA of a dispute). Cooke alleges that her letters to the CRAs disputed "the account status, account balance, and monthly statement amount." Am. Compl. ¶ 107. Viewing the allegations in the light most favorable to Cooke, the Court infers that Cooke's letters to the CRAs related to the same alleged inaccuracies in her mortgage statements that she disputed with Carrington in the same time period, including her claim that she did not owe a disputed amount of over $6,000 for the period from August 2015 to December 2015. Because Cooke plausibly alleges that there were inaccuracies in her mortgage statements that were never corrected, she states a claim against Carrington for failing to properly investigate and correct the disputed information in violation of § 1681s-2(b). Therefore, the Court denies Carrington's Motion to Dismiss Cooke's FCRA claims.

## CONCLUSION

For the foregoing reasons, Carrington's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is granted in that the Court will dismiss (1) the FDCPA claims under 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692f; (2) the MCDCA claims; and (3) the MCPA claims based on the MCDCA. The Motion is otherwise denied.

Date:  December 3, 2018

THEODORE D. CHUANG
United States District Judge

24