IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GLORIA COOKE | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 8:18-cv-00205-TDC |
| | * | |
| CARRINGTON MORTGAGE SERVICES | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff, Gloria Cooke, by undersigned counsel, files her Opposition to Defendant Carrington Mortgage Services, LLC ("CMS") Motion to Dismiss Second Amended Complaint. In support of her Opposition, the Plaintiff states the following:

**STANDARD OF REVIEW**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint needs to only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As only the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Consequently, a rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff 's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l.*, 248 F.3d 321, 325 (4th

Cir. 2001). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).

## ARGUMENT

**I.    PLAINTIFF'S FDCPA CLAIMS ARE SUFFICIENTLY ALLEGED AND SHOULD NOT BE DISMISSED.**

In its Motion to Dismiss, the Defendant argues that: (1) the Plaintiff has not allege CMS is a debt collector, ECF 46 at 3-5; (2) the Notice of Intent to Foreclose ("NOI") did not violate the FDCPA, at 15 U.S.C. §§1692e(5) and 1692f(6), ECF 46 at 6 & 7; (3) Plaintiff does not adequately allege CMS threatened a foreclosure action in violation of §1692e(5), ECF 46 at 7; (4) Plaintiff does not adequately allege that CMS made any misrepresentations in the collection of the debt in violation of §1692e(10), ECF 46 at 8; (5) CMS did not violate §1692e(5) by foreclosing after receiving a loss mitigation application because Plaintiff failed to allege she submitted a *complete* loss mitigation application, ECF 46 at 9; (6) Plaintiff's vague allegation that CMS "scheduled" a foreclosure was insufficient to state a claim under §1692e(5), ECF 46 at 9; and Plaintiff's §1692f(6) claims fail because the violations are impermissibly based on the same acts that violated §1692e(5). *See* ECF 46 at 7, 8 & 9. The Plaintiff will address each argument in turn.

**A.    Plaintiff Has Alleged CMS Is A Debt Collector.**

Defendant's first argument is that Plaintiff does not allege CMS is a debt collector. ECF 46 at 3.[1] This argument is completely meritless. CMS is a debt collector if it treated the debt as in default at the time that CMS acquired the debt. *Allen v. Bank of America Corp.*, 2011 WL 3654451, fn. 9 (D. Md. Aug. 18, 2011) ("Where a servicer believes a loan to be in default at the time it commences servicing, however, courts have found it is not exempt from the FDCPA's definition of "debt collector.") (citing *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536-39 (7th Cir.2003)). And contrary to Defendant's arguments otherwise, *see* ECF 46 at 5, Plaintiff has alleged that CMS treated the loan as in default when it acquired the debt. *See* SAC ¶¶13-14, 18 & 21-24. (Bank of America claimed the loan was in default when CMS acquired the loan on December 1, 2015 and CMS demanded $7,543.65 and threatened fees and foreclosure if the loan was not brought current).

Moreover, even if Plaintiff claims that the loan was *not* in default, the Plaintiff has alleged that CMS treated the debt as delinquent, and therefore, CMS falls within the purview of the FDCPA. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362-63 (6th Cir. 2012) ("[T]he definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention. Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default…"). *And see also Bohringer v. Bayview Loan Servicing, LLC*, 141 F.Supp.3d 1229 (S.D. Fla. 2015) ("Bayview is correct Plaintiffs allege

---

[1] The Court's 01/09/19 Order limited the Defendant's Motion "to Plaintiff's new allegations." ECF 39. Plaintiff's new allegations incorporated the prior allegations of the SAC, including allegations regarding CMS' status as a debt collector. But the actual new allegations did not concern CMS status as a debt collector. In fact, the Defendant did not argue in its Motion to Dismiss the First Amended Complaint that Plaintiff failed to alleged CMS is a debt collector. Because the Defendant did not raise that issue, the Plaintiff did not provide argument and did not seek to amend the complaint to address this new argument from CMS. Therefore, CMS argument should be struck in accordance with the Court's 01/09/19 Order because it pertains to Plaintiff's old allegations, not her new allegations.

the Loan was never in default … but Plaintiffs are equally correct the analysis does not end there. Even if a debt is not actually in default at the time its servicing rights are transferred to a loan servicer, the debt is nevertheless "in default" under the FDCPA if the servicer treats the debt as in default at the time of transfer.") (citing *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, fn. 2 (11th Cir. 2015)).

### B.    Plaintiff Has Alleged CMS Violated 15 U.S.C. §§1692e(5) And 1692f(6).

Defendant argues that paragraph 78 does not allege a violation of §§1692e(5) and 1692f(6). *See* ECF 46 at 6 & 7. Defendant points to the Court's Memorandum wherein it held that Plaintiff failed to allege the NOI threatened an action that could not legally be taken. Id. at 6 citing Memorandum Opinion at p.10. According to Defendant, "the Court already determined that sending the Notice of Intent to Foreclose is no basis for a claim under 1692e(5) or f(6)" and that Plaintiff's "attempt to use the Second Amended Complaint to have the Court reconsider an issue that it already decided should be stricken." Id. at 6-7. Defendant's argument is misplaced.[2]

In its Memorandum Opinion, the Court acknowledge that the language in the NOI "could be construed by the least sophisticated consumer as a threat to sell the property after 45 days if she did not cure the default." Id. at 6. "However, [the Court further found that] Cooke ha[d] not plausibly alleged that such action c[ould not] legally be taken." Id. Maryland law states that a foreclosure sale of residential property may not occur until at least forty-five days after service of process of the foreclosure action. *See* Md. Code Ann., Real Prop. § 7–105.1(n). Therefore, a foreclosure *sale* cannot occur until after the (1) foreclosure action has been *filed*, (2) foreclosure order to docket has been *served*, and (3) at least 45 days have elapsed. Consequently,

---

[2] The Court dismissed Plaintiff's FDCPA 1692e(5) claim under a legal theory that CMS did not raise, therefore, Plaintiff did not have an opportunity to address the argument.

Defendant's claim and/or threat that it could conduct a foreclosure sale without *filing* a foreclosure action, is a threat to take an illegal action. 15 U.S.C. §1692e(5).

In *Cezair v. JPMorgan*, 2014 WL 4295048 (D. Md. Aug. 29, 2014), a similar situation took place. The plaintiff in *Cezair* received a letter threatening to foreclosure from the Substitute Trustees appointed by lender, Chase, to foreclose on the property. *Id*. at *9. Similar to the notice in this case, the notice in *Cezair* "stated that a foreclosure sale 'may' occur at any time after forty-five days from the date of the notice." *Id*. The Notice was dated August 16, 2013, so the Substitute Trustees were threatening to foreclosure 45 days from August 16, 2013, which was September 30, 2013. *Id*. The threat was false because the Substitute Trustees did not serve *Cezair* until August 28, 2013. *See* Real Prop. § 7–105.1(n), *supra*. Therefore, the foreclosure sale could not occur any earlier than 45 days after August 28, 2013, which was October 14, 2013. *Id*.

The "Defendants argue[d] that they were simply following Maryland law by sending the notice to occupants earlier than the foreclosure order to docket." *Id*. at *10. However, the *Cezair* court found that in order to comply with the law, "the notice to occupants should be made simultaneously with the *service* of the foreclosure order to docket, and not when the foreclosure order to docket is *filed* in the Circuit Court, which would occur before service." *Id*. (slightly paraphrased). The *Cezair* court held that "[i]f such a statement [to sell a property at foreclosure auction] is made before the legal right to do so exists, it can constitute a threat to act that is made with knowledge of the threat's illegality." *Id*.

Here, the Defendant CMS has made a similar statement as the defendant in *Cezair*. However, in *Cezair* the defendant had actually *filed* the foreclosure action when it made the offending statement but had not *served* the defendant. Here, the violation is even worse because CMS had not even *filed* the foreclosure action when CMS made the statement that it could *sell*

5

the Plaintiff's Property at a foreclosure auction. If the *Cezair* court found the defendant violated the law by threatening to foreclose days before it accrued the right to foreclose, *see id*. at *9 ("the Substitute Trustees were threatening to sell his property through foreclosure as early as September 30, 2013, when they had no right to do so until October 14, 2013 at the earliest"), then surely CMS is liable for threatening to foreclose months (if not a year) before it could *possibly* have had a right to foreclose. *See* SAC ¶¶23-26 & 33 (CMS threatened to foreclose as early as February 5, 2016 but the earliest possible date was May 8, 2016).

  C. **Plaintiff Has Alleged CMS Violated 15 U.S.C. §§1692e(5), 1692(10) & 1692f(6) By Attempting To Foreclose On Plaintiff's Property Without Complying With The Terms And Conditions Of The Deed Of Trust.**

Defendant argues that paragraph 79 is insufficient because it "claims that Carrington 'misrepresented that it had complied with all conditions precedent in the DOT, but does not provide any underlying facts to support that naked assertion." ECF 46 at 8. Contrary to Defendant's claims, the Plaintiff does provide underlying facts to support its allegation that CMS failed to satisfy the conditions precedent to the DOT. More particularly, the Plaintiff alleges she had an FHA loan, which required the lender or servicer to hold a face-to-face meeting before filing a foreclosure action, *see* SAC ¶4, and that CMS did not attempt to conduct such a face-to-face meeting prior to filing the foreclosure action. *See* id. ¶33.

CMS' failure to hold the face-to-face meeting was a legal bar to CMS initiating the foreclosure action. *See Covarrubias v. CitiMortgage, Inc.*, 623 Fed. Appx. 592, 593 (4th Cir. 2015) ("Where the deed of trust requires compliance with incorporated HUD regulations, 'the face-to-face meeting requirement of § 203.604(b) (2015) is a condition precedent to the accrual of the rights of acceleration and foreclosure.'"); *Bagley v. Wells Fargo Bank, N.A.*, 2013 WL 350527, *5 (E.D. Va. Jan. 29, 2013) ("Accordingly, by asserting that Defendants failed to comply

with § 203.604, Plaintiffs have sufficiently alleged that Defendants failed to satisfy a condition precedent to foreclosing on the home, and thus, have breached the Deed of Trust."); *Matthews v. PHH Mortgage*, 283 Va. 723, 736 (2012) (Accordingly, the face-to-face meeting requirement is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the Deed of Trust.).

    **D.**    **Plaintiff Has Alleged CMS Violated 15 U.S.C. §§1692e(5) And 1692f(6) By Threatening To Conduct A Foreclosure Sale Without Acting On Plaintiff's Loss Mitigation Application.**

Defendant argues that paragraph 80 is insufficient because it claims CMS "supposedly threatened a foreclosure sale while there was an outstanding loss mitigation application" but 12 C.F.R. 1024.41(c)(1) requires a servicer receive a *complete* loss mitigation application and Plaintiff "does not allege that the application was *complete*." ECF 46 at 9. Again, the Defendant misses the mark. Notably, the Defendant does not cite to any case law to support its argument. While the Defendant makes a big fuss out of the fact that the Plaintiff did not use the words "complete," the SAC does *not* allege the application was *incomplete*, and therefore, the Court should make the favorable inference that the application was complete. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) ("[T]he district court [must] draw all reasonable inferences in favor of the plaintiff.") (citing *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999)).

Further, the SAC alleges that CMS did not act on the loss mitigation application. SAC ¶¶ 54-55 & 60. Taking that allegation as true, CMS had to treat the loss mitigation application as

"complete." *Paz v. Seterus*, 2015 WL 4389521, *2 & 3 (S.D. Fla. Jul. 16, 2015).[3] Being that Plaintiff submitted her loss mitigation application on November 28, 2016, SAC ¶54, and CMS scheduled a foreclosure sale in April 2017, Id. ¶60, well over 45 days elapsed from the date of the application submission; CMS was required to respond to her application before it conducted a foreclosure sale. *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 Fed. Appx. 525, 529 (11th Cir. 2018) ("Ho submitted an application to Wells Fargo, but did not receive a written response as required by § 1024.41(b)(2)(B) or (c)(1) before her home was sold in violation of § 1024.41(g). Ho's complaint therefore alleges sufficient facts to state a plausible violation of RESPA and Regulation X.").

Next, Defendant claims that "Plaintiff's allegation is too vague [because s]he merely refers to Carrington 'scheduling' a foreclosure sale, but does not provide any detail as to what that means, or how it relates to 1692e(5)." ECF 46 at 9. According to Defendant, "scheduling may simply be the act of instructing a substitute trustee under the Deed of Trust to sell the property on a certain date" and that "[t]here is no mention of her being threatened with a foreclosure sale." Id. It is axiomatic that the act of scheduling a foreclosure sale is tantamount to a threating to sell the Plaintiff's property at a foreclosure auction sale. Indeed, the act of "scheduling" a foreclosure sale without complying with RESPA loss mitigation requirements, is a violation of FDCPA, 15 U.S.C. §1692e(5). *See Farber v. Brock & Scott, LLC*, 2016 WL 5867042, *5 & 6 (D. Md. Oct. 6, 2016) ("Here, the Farbers allege that Brock & Scott violated these provisions of the FDCPA by scheduling and advertising the foreclosure sales on two

---

[3] "If a servicer receives an incomplete application more than forty-five days before the foreclosure sale, the servicer must notify the borrower within five days that additional documents and information are required to complete the application." *Paz*, 2015 WL 4389521, at *2 citing § 1024.41(b)(2)(i)(B). "If a servicer receives an incomplete loss mitigation application more than thirty-seven days before a foreclosure sale, then the servicer must act with 'reasonable diligence' to obtain documents and information to complete the application" *Id*. citing § 1024.41(c)(2)(ii). "If the servicer fails to seek additional documentation, then **the incomplete application "shall be considered facially complete."** *Id*. citing § 1024.41(c)(2)(iv) (emphasis added).

occasions when the sales were not permitted by law. These allegations are sufficient to state a claim for a violation of the FDCPA because the scheduling and advertising of the foreclosure sales could each constitute a "threat to take any action that cannot legally be taken or that is not intended to be taken.") (citing § 1692e(5)) (Because RESPA prohibited such a foreclosure sale at that time, the scheduling and advertising of the foreclosure sale could constitute a debt collector's "threat to take any action that cannot be legally taken.") (citing 15 U.S.C. § 1692e(5).)

### E.      CMS' Actions May Constitute Violations Of Both §§1692e(5) And 1692f.

Plaintiff has alleged CMS violated several provisions of the FDCPA, including 1692e and 1692f. Defendant argues that Plaintiff cannot allege the same action violated both provisions. This simply is not true. In *Farber*, the court found that the defendant's threat to conduct an illegal foreclosure sale violated both 1692e and 1692f. *Farber*, 2016 WL 5867042, at *6 ("Because developing and publicly advertising a plan to move forward on a foreclosure sale not permitted by law could be considered an "unfair" means of seeking to collect a debt, the Farbers have plausibly alleged violations of both 15 U.S.C. §§ 1692e and 1692f.). The full quote is instructive:

> Moreover, the scheduling and advertising of a foreclosure sale at time when there was no legal right to conduct the sale could also violate 15 U.S.C. § 1692f, which generally bars a debt collector from engaging in "unfair ... means to collect or attempt to collect a debt." § 1692f. Such unfair means are not limited to the non-exclusive list contained in the statute. *Id.* The FDCPA "prohibits 'in general terms' harassing, unfair, or deceptive collection practices." *Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 536 (6th Cir. 2014) (holding that a debt collector violated the FDCPA by filing and maintaining a lien that was invalid under state law). "While 'misleading' practices under § 1692e and 'unfair' practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive." *Id*. Repeatedly scheduling and advertising foreclosure sales that are impermissible under federal and state law "would cause at least as much improper exposure as communicating

with a consumer via post card or sending mail with a symbol other than the debt collector's address," both of which specifically violate § 1692f. *See id.* at 535; 15 U.S.C. § 1692f(7)-(8). Because developing and publicly advertising a. plan to move forward on a foreclosure sale not permitted by law could be considered an "unfair" means of seeking to collect a debt, the Farbers have plausibly alleged violations of both 15 U.S.C. §§ 1692e and 1692f.

*Farber*, 2016 WL 5867042, at *6. *Also see Neeley v. Portfolio Recovery Associates, LLC*, 2018 WL 1558243, *4 (S.D. Ind. Mar. 22, 2018) ("PRA asserts that Neeley and the class cannot rely on the same arguments to establish a violation of § 1692f as they did to establish liability under § 1692e because it would make one or the other section redundant, and because a violation of one part of the statute does not necessarily violate another one. This court has previously held that questionable language in debt collection letters can violate both § 1692e and § 1692f, and they are not mutually exclusive. *Holt v. LVNV Funding, LLC*, 147 F. Supp. 3d 756, 762-63 (S.D. Ind. 2015) (relying on the same analysis to conclude plaintiff stated a claim under both statutes and rejecting defendants' argument that the statutes are mutually exclusive) (citing *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 760-65 (7th Cir. 2006); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004)). For this reason, the court rejects PRA's contention that the same conduct may violate only a single section of the FDCPA."); Thompson v. Midland

Funding, LLC, 2019 WL 1342787, *4 (E.D. Ky. Mar. 25, 2019) (It is well-established that filing a time-barred lawsuit violates one or multiple provisions of §§ 1692e and 1692f.[4]

Moreover, if the Plaintiff fails to prove her 1692e claim, then the Plaintiff should have the option of proving her 1692f claim.

## II. PLAINTIFF'S MCDCA CLAIMS ARE SUFFICIENTLY ALLEFGED AND SHOULD NOT BE DISMISSED.

The Plaintiff's MCDCA claim mirrors her FDCPA claim, and for the reasons stated above, the Plaintiff has stated a valid MCDCA claim. *See Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 732-33 (D. Md. 2011) ("This Court notes the similarities between the Maryland Consumer Debt Collection Act and Section 1692e(5) of the Fair Debt Collection Protection Act and finds that, for the reasons stated above, Hilco has violated Section 14–202(8) of the Maryland Consumer Debt Collection Act."). *And see also Askew v. HRFC, LLC*, 810 F.3d 263, 272-73 (4th Cir. 2016); *Awah v. Capital One Bank, N.A.*, 2016 WL 930975, *6 (D. Md. Mar. 11, 2016); *Allen v. Silverman Theologou, LLP*, 2015 WL 2129698, *5 (D. Md. May 6, 2015);

---

[4] In *Brown v. I.C. System, Inc.*, 2019 WL 1281972, *6 (N.D. Ill. Mar. 20, 2019), the court found:

> If plaintiff's allegations are true, then defendant's conduct falls within the scope of § 1692d and § 1692e, and according to defendant, that means it necessarily does not fall within the scope of § 1692f. Some courts would agree with defendant that debt collection practices do not violate § 1692f if they violate other provisions of the FDCPA, *see, e.g., Mills v. Turner*, No. CV 15-13267-MLW, 2017 WL 3670967, at *11 (D. Mass. Aug. 25, 2017), but the Seventh Circuit is not among them. The Seventh Circuit has recognized that the same conduct can violate § 1692f as well as other provisions. *See McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 765 (7th Cir. 2006) (debtor who received letter accusing her of dishonesty stated claim under both § 1692e(7) and f) (citing *Field v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (debtor who received misleading letter stated claim under § 1692e and f) ); *see also Todd*, 731 F.3d at 739 (citing as "instructive" *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994), which held that "seeking a writ of garnishment when the debtor was not behind in making payments can violate § 1692f," where debtor had also stated overlapping claims under § 1692d and e). in *Currier v. First Resolution Investment Corp.*:
>
> > It must be remembered that the [FDCPA] prohibits "in general terms" harassing, unfair, or deceptive collection practices. S.Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698. While "misleading" practices under § 1692e and "unfair" practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be "misleading" under § 1692e, "unfair" under § 1692f, or, as alleged here, both.
>
> 762 F.3d 529, 536 (6th Cir. 2014); *see also Tarrant v. Portfolio Recovery Assocs., LLC*, No. 3:11-00664, 2011 WL 5042057, at *4–5 (M.D. Tenn. Oct. 24, 2011) (sending collection letter that failed to disclose debtor's rights under § 1692g was an "unfair" practice under § 1692f)

*Fontell v. Hassett*, 891 F.Supp.2d 739, 743 (D. Md. 2012). Indeed, the *Cezair* case analyzed above involved only a MCDCA, Com. Law §14–202(8) claim, as the violating conduct was outside of the one-year statute of limitation time-period for a FDCPA claim.

Additionally, Defendant makes the disingenuous argument that "Plaintiff ignores that Maryland law *requires* that a Notice of Intent to Foreclose be sent before a foreclosure action is filed." ECF 46 at 10 citing to Md. Code Ann., Real Prop. §7-105.1(c) (which states that "*at least 45 days before the filing of an action to foreclose* a mortgage … the secured party *shall send a written notice of intent to foreclose* to the mortgagor …".). Once again, the Defendant's argument is off-based. The SAC clearly alleges that it was *not* the NOI that threatened to conduct a foreclosure *sale*, but it was a letter that was "[c]ontemporaneously sent with the Notice of Intent." SAC ¶24. So, it was not the language in the Notice of Intent that Plaintiff alleged violated the MCDCA, but it was the language in the letter. *See* id. ¶¶24-26.

Defendant also argues that Plaintiff failed to "claim that the debt is invalid" and that "Plaintiff does not provide any facts indicating that Carrington had *knowledge* that it had no right to proceed with a foreclosure sale." ECF 46 at 11. Both of these throw away arguments have no merit. With respect to Defendant's argument that Plaintiff must claim the debt is invalid, this argument squarely contradicts the language of the statute. *Cezair*, 2014 WL 4295048, at *10 ("Section 14–202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as

proscribing certain *methods* of debt collection rather than the debt itself.") (quoting *Fontell v. Hassett,* 870 F.Supp.2d 395, 405 (D. Md. 2012)).[5]

As for Defendant's claim that Plaintiff has not alleged sufficient facts to establish CMS had knowledge that it had no right to foreclose, the argument has no merit because "knowledge[] and other condition[s] of mind of a person may be averred generally." *Beuster v. Equifax Information Services*, 435 F.Supp.2d 471, 480 (D. Md. 2006) (citing Fed. R. Civ. P. 9(b).). Therefore, Plaintiff's general allegations of knowledge is sufficient at the pleading stage. Further, the Plaintiff has alleged specific facts to establish that Defendant knew it had no right to foreclose. More specifically, the Plaintiff alleged that she notified CMS in July 2016 that it had no right to foreclose because it did not hold a face-to-face meeting. SAC ¶38. Despite being put on notice in July 2016 that it could not foreclose, the Defendant CMS scheduled foreclosure sales in December 2016 and April 2017. *See* Id. ¶¶55&60.[6]

### III. PLAINTIFF'S AMENDMENT TO COUNT FOUR (RESPA) SHOULD BE ALLOWED FOR JUDICIAL EFFICIENCY.

Plaintiff's new RESPA amendment parallels her new amendments for the FDCPA and MCDCA. Rather, than requiring the Plaintiff to file another motion to amend the complaint to

---

[5] *Pruitt v. Alba Law Group, P.A.*, 2015 WL 5032014, at *5 (D. Md. Aug. 24, 2015) ("The MCDCA … is meant to proscribe certain methods of debt collection," and to that end, it "focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid.") (quoting *Fontell*, 870 F. Supp. 2d at 405); *Allen v. Silverman Theologou, LLP*, 2015 WL 2129698, *6 (D. Md. May 6, 2015) ("the relevant question is not the validity of the debts, but instead whether Silverman had knowledge that it lacked the right."). *Cf. Awah v. Capital One Bank, N.A.*, 2016 WL 930975, *5 (D. Md. Mar. 11, 2016) ("Plaintiff ... cannot challenge the validity of the underlying debt under the MCDCA.")

[6] Defendant impermissibly challenges the merits of Plaintiff's allegations by claiming the facts of the SAC imply that CMS had no knowledge that it was violating the MCDCA. ECF 46 at 11. First, a Rule 12(b)(6) is not the proper mechanism to challenge the merits of a complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (holding Rule 12(b)(6) is *not* to be used to "test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Second, the law requires that CMS not only mail a letter but to make a visit to the property when attempting to arrange a face-to-face meeting. CMS knows the law and knows that it did not make a visit to the property.

add the RESPA claim, it would be more efficient if the Court permitted Plaintiff to make the amendment with the SAC.

**IV. CONCLUSION.**

For the foregoing reasons the Plaintiffs request this Court DENY Defendant 's Motion to Dismiss. If the Court is inclined to grant any portion of the Defendant's Motion to Dismiss, then the Plaintiff requests leave to amend to address the specific findings and issues the Court finds lacking.

Respectfully submitted,

LOBATO LAW LLC

\_\_\_\_\_/s/_____
Quinn Breece Lobato,
Lobato Law LLC
8583 Seasons Way
Lanham, MD 20706
Tel: (240) 305-4770
E-mail: quinn.lobato@gmail.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on April 5, 2019, a copy of the foregoing Motion were caused to be served on all parties by filing these documents with the Clerk of Court who enters the documents into the Court's CM/EMF system, which electronically transmits a copy to the registered participants as identified on the Notice of Electronic Filing.

_____/s/_____
Quinn Lobato