# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GLORIA COOKE,

    Plaintiff,

    v.

CARRINGTON MORTGAGE SERVICES,

    Defendant.

Civil Action No. TDC-18-0205

## MEMORANDUM OPINION

Plaintiff Gloria Cooke has filed this action against Carrington Mortgage Services ("Carrington") alleging various federal and state statutory violations in connection with Carrington's efforts to foreclose on Cooke's mortgage. Pending before the Court is Carrington's second Motion to Dismiss, ECF No. 46, in which Carrington seeks partial dismissal of the Second Amended Complaint filed by Cooke. Having reviewed the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The factual background is set forth in the Court's Memorandum Opinion on Carrington's first Motion to Dismiss and is incorporated by reference. *See Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2018 WL 6323116, at *1–2 (D. Md. Dec. 3, 2018). The Court therefore summarizes only the procedural history and new allegations relevant to the present Motion.

On December 19, 2016, Cooke filed the present case in the Circuit Court for Prince George's County, Maryland. After Carrington timely removed the action to this Court, Cooke

filed an Amended Complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2012); the Maryland Consumer Debt Collection Practices Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14–201 to 14–204 (West 2013); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–101 to 13–501; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012); and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x (2012). On May 18, 2018, Carrington filed a Motion to Dismiss the Amended Complaint for failure to state a claim.

On December 3, 2018, the Court issued a Memorandum Opinion granting in part and denying in part Carrington's first Motion to Dismiss. The Court dismissed Cooke's FDCPA claims under 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692f, as well as her MCDCA claims and her MCPA claims based on the MCDCA. The Court denied the Motion as to the remaining counts.

On December 17, 2018, Cooke filed a Notice of Intent to File a Motion for Reconsideration and/or a Motion for Leave to File a Second Amended Complaint pursuant to the Court's Case Management Order. After a conference with counsel for both parties, the Court granted Cooke leave to file a Second Amended Complaint but ordered that "[t]he amendments shall be limited to the counts that were dismissed in the Court's December 3, 2018 Memorandum Opinion and the deficiencies identified therein." ECF No. 39. Similarly, the Court ordered that any subsequent motion to dismiss filed by Carrington be limited to Cooke's new allegations.

Cooke filed her Second Amended Complaint on January 31, 2019. The Second Amended Complaint asserts additional bases for liability against Carrington under the FDCPA, MCDCA, and RESPA.

**DISCUSSION**

In its second Motion to Dismiss, Carrington argues that (1) the amended FDCPA claims should be dismissed because it is not a "debt collector" subject to the FDCPA and because Cooke fails to allege that it engaged in conduct prohibited by the FDCPA; (2) the amended MCDCA claims should be dismissed because Cooke fails to allege plausibly that Carrington did not have a right to foreclose on her property or that it acted with the required knowledge; and (3) the amended RESPA claim should be stricken because it is outside the scope of the Court's order granting Cooke leave to file her Second Amended Complaint.

## I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. FDCPA

In Count One of the Second Amended Complaint, Cooke asserts additional bases for liability against Carrington under the FDCPA. The FDCPA is violated when (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub. nom.,*

*Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013).   Carrington does not dispute the first element but argues that Cooke's amended FDCPA claims fail because it is not a "debt collector" within the meaning of the Act and because Cooke fails to allege that it violated a provision of the Act.

### A.   Debt Collector

The FDCPA only regulates the activities of "debt collector[s]." 15 U.S.C. §§ 1692b-1692g, 1692k(a). As the United States Supreme Court recently observed, the Act contains both a "primary definition" and a "limited-purpose definition" of the term "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035–36 (2019). The primary definition provides that the term "means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The limited-purpose definition states: "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." *Id.*

In *Obduskey*, decided since the Court ruled on the first Motion to Dismiss, the Supreme Court considered the interplay of these definitions to determine whether a law firm carrying out a nonjudicial foreclosure was a "debt collector" subject to the FDCPA. 139 S. Ct. at 1033–36. It found that the "limited-purpose definition narrows the primary definition, so that the debt-collector-related prohibitions of the FDCPA (with the exception of § 1692f(6)) do *not* apply to those who ... are engaged in no more than security-interest enforcement." *Id.* at 1037. The Supreme Court then held that the defendant law firm fell within the FDCPA's limited-purpose definition when it initiated a nonjudicial foreclosure in the manner required by state law. *Id.* at 1037–39. Accordingly, the law firm was only subject to § 1692f(6) of the FDCPA. *Id.*

Carrington argues that *Obduskey* forecloses all of Cooke's FDCPA claims except for those brought under § 1692f(6) because it is only a "debt collector" within the limited-purpose definition of the FDCPA. Carrington, however, reads *Obduskey* too broadly. The Supreme Court's holding in *Obduskey* extends only to security-interest enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law. *See* 139 S. Ct. at 1039 (stating that "we assume that the notices sent by [defendant] were antecedent steps required under state law to enforce a security interest" and reasoning that "we think the [FDCPA's] (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so"). Here, unlike in *Obduskey*, Carrington was not a law firm retained solely to execute a nonjudicial foreclosure. Cooke asserts FDCPA claims against Carrington for a variety of conduct beyond standard procedures in a nonjudicial foreclosure, including contradicting her right to dispute the debt, collecting or threatening to collect an inflated mortgage reinstatement amount, threatening to foreclose on her property before it was permitted by law, and misrepresenting its compliance with the terms of the deed of trust. Carrington has not identified any provision of Maryland law that required this conduct to enforce its security interest, and this Court is aware of none. *See* Md. Code Ann., Real Prop. §§ 7–105 to 7–105.8 (West 2019) (outlining foreclosure requirements), *amended by* H.B. 107, 2019 Leg., Ch. 93 (Md. 2019) (effective Oct. 1, 2019). Therefore, *Obduskey* does not except Carrington from the full coverage of the FDCPA and thus does not provide a basis for dismissal of any of Cooke's FDCPA claims. *See Sevela v. Kozeny & McCubbin, L.C.*, No. LSC-18-0390, 2019 WL 2066924, at *4–5 (D. Neb. May 2, 2019) (holding that the defendant law firm was a "debt collector" subject to the full coverage of the FDCPA when it sent a letter to plaintiff attempting to collect his debt because the letter was not required by state law to pursue a nonjudicial foreclosure).

Carrington further argues, more broadly, that it is not a "debt collector" subject to any

provisions of the FDCPA because Carrington is a loan servicer, and Cooke nowhere alleges that

her mortgage was in default at the time it was transferred to Carrington.  The Court notes at the

outset that this argument is outside the scope of the Court's order of January 9, 2019, which stated

that "[i]f, following the submission of the amended complaint, Defendant intends to file a motion

to dismiss ... the Motion shall be limited to Plaintiff's new allegations and shall not revisit any

previously litigated issues in the first Motion to Dismiss." ECF No. 39.  This argument regarding

Carrington's "debt collector" status does not pertain to any of Cooke's new allegations and, unlike

its argument that rests on *Obduskey*, it is not based on any intervening case law.

In any event, this argument is without merit.  A loan servicer is considered a "debt

collector" within the meaning of the FDCPA if the loan is in default at the time it commences

servicing or if the servicer treats the loan as if it is in default. *See Bridge v. Ocwen Fed. Bank,*

*FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (holding that "the definition of debt collector ... includes

any non-originating debt holder that either acquired a debt in default or has treated the debt as if it

were in default at the time of acquisition"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534,

537–38 (7th Cir. 2003) (holding that a servicer was a debt collector where it mistakenly believed

that the loan was in default when it acquired it and took actions exhibiting an intent to collect the

debt); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 277 (D. Md. 2015) (finding that

the plaintiffs plausibly alleged the defendant loan servicer was a "debt collector" under the FDCPA

where they asserted that their loan was not in default when the defendant acquired it but that the

defendant "believed the associated account was in default ... and has attempted and actually

collected on [it]").  Here, Cooke alleges that "[a]t the time of the transfer [to Carrington], BOA

claimed the mortgage loan was still in default," that Carrington sent her a mortgage statement

warning that failure to bring the loan current could result in foreclosure, and that, three weeks after the transfer, Carrington sent her a Notice of Intent to Foreclose. Second Am. Compl. ¶¶ 13–14, 18, 23, ECF No. 41. These allegations lead to the plausible inference that Carrington treated Cooke's loan as if it was in default when it was transferred to it from BOA and, thus, that Carrington is a "debt collector" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6).

## B.    Section 1692e

The remaining question relating to the FDCPA claims is whether Cooke plausibly alleges that Carrington engaged in conduct prohibited by the statute. The Second Amended Complaint asserts multiple additional violations of the FDCPA, including violations of 15 U.S.C. § 1692e(5) and (10). Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Cooke alleges that Carrington violated this provision by threatening to foreclose before it was permitted by Maryland law, which prohibits foreclosure sales of residential property until 45 days after service of process of the foreclosure Order to Docket. *See* Md. Code Ann., Real Prop. § 7–105.1(n). Specifically, Cooke alleges that Carrington sent her a letter on or about December 22, 2015 in which it "threaten[ed] to accelerate and sell the Property after 45 days elapsed" if she failed to cure the default. Second Am. Compl. ¶¶ 24, 78. Cooke interpreted this letter to mean that a foreclosure sale could occur as soon as 45 days after the date of the letter. Under Maryland law, however, where she was not served with the Order to Docket until March 24, 2016, a foreclosure sale was not permitted until May 8, 2016, 45 days after service was effected.

Carrington argues that this claim should be stricken because the Court "already determined that sending the Notice of Intent to Foreclose is no basis for a claim under § 1692e(5)." Mot. Dismiss at 6–7, ECF No. 46. This argument, however, rests on a misreading of Cooke's claim and

the Court's prior Memorandum Opinion. Cooke's § 1692e(5) claim is based not on the Notice of Intent to Foreclose sent to Cooke but rather on the letter sent to her "[c]ontemporaneously ... with the Notice of Intent" in which Carrington "threaten[ed] that Plaintiff's loan could be accelerated and sold at a foreclosure sale" before it was permissible under Maryland law. Second Am. Compl. ¶¶ 24, 26. In its prior Memorandum Opinion, the Court did not consider, much less determine, whether such conduct could support liability under the FDCPA. Rather, in dismissing Cooke's FDCPA claim that Carrington violated § 1692e(5) and § 1692f(6) by "threatening to sell Plaintiff's Property at a public auction when they had no legal right to [sell] the Property," the Court rejected Cooke's claim that foreclosure cannot occur absent possession of the original note and thus concluded that Cooke had failed to allege plausibly that Carrington did not have a right to foreclose on her property generally. *Cooke*, 2018 WL 6323116, at *5.

The Court further finds that Cooke has stated a claim for a violation of § 1692e(5) based on this conduct. The least sophisticated debtor could interpret Carrington's statement "that [Cooke's] loan could be accelerated and sold at a foreclosure sale if [she] failed to cure the default within 45 days" as a threat to sell her property through foreclosure after 45 days elapsed. Second Am. Compl. ¶ 24. *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135–36, 139 (4th Cir. 1996) (adopting the "least sophisticated debtor" standard to determine whether notices from debt collector violate § 1692e(5) and § 1692e(10)); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195–96 (11th Cir. 2010) (finding that reasonable jurors applying the least sophisticated consumer standard could view defendant's letter as a "threat" under § 1692e(5) where it stated, in relevant part: "If we are unable to resolve this issue within 35 days, we may refer this matter to an attorney in your area for legal consideration."). Conducting a foreclosure sale immediately after this 45-day period elapsed was an action that could not "legally be taken"

8

because Cooke alleges that she was not served with the foreclosure Order to Docket until over three months after she received this letter, on March 24, 2016, and Maryland law prohibits foreclosure sales until 45 days after that time.  15 U.S.C. § 1692e(5); Md. Code Ann., Real Prop. § 7–105.1(n).  *See also Farber v. Brock & Scott, LLC*, No. TDC-16-0117, 2016 WL 5867042, at *5–6 (D. Md. Oct. 6, 2016) (finding that the plaintiffs stated a claim for violation of § 1692e(5) where they alleged that the defendant scheduled a foreclosure sale before it was permissible under state law).  Therefore, Cooke has stated a claim for a violation of § 1692e(5).

Cooke also alleges that Carrington violated § 1692e(5) by threatening and scheduling a foreclosure sale before it acted on her loss mitigation application.  This theory of liability under the FDCPA relies on a provision of RESPA's implementing regulations, also known as "Regulation X," which are codified at 12 C.F.R. §§ 1024.1-1024.41.  Subpart C of Regulation X is titled "Mortgage Servicing" and contains a provision that regulates loan servicers' loss mitigation procedures.  *See* 12 C.F.R. § 1024.41 (2016).  Under that section, a servicer that receives a borrower's "complete loss mitigation application more than 37 days before a foreclosure sale" must evaluate the borrower for all loss mitigation options, provide the borrower with written notice of its options, if any, and notify the borrower in writing if its application has been rejected.  12 C.F.R. § 1024.41(c)-(d).  "[A] servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" unless it has notified the borrower that the loss mitigation application was denied and the borrower has exhausted its appeal rights.  12 C.F.R. § 1024.41(g).

Carrington argues that Cooke's FDCPA claim based on its alleged violation of RESPA's loss mitigation procedures should be dismissed because Cooke nowhere alleges that she submitted a "complete" loss mitigation application.  This argument is without merit.  Cooke alleges that she submitted a "loss mitigation application" on November 28, 2016 and, viewing the allegations in

the light most favorable to her, the Court can plausibly infer that this was a complete loss mitigation application. Second Am. Compl. ¶ 54. Cooke further asserts that Carrington had not yet acted on that application when it scheduled a foreclosure sale to take place in April 2017, more than 37 days later. Because RESPA prohibits a foreclosure sale before such an application has been denied and all appeal rights exhausted, the scheduling of this sale could constitute a debt collector's "threat" to take an action "that cannot legally be taken" in violation of § 1692e(5). 15 U.S.C. § 1692e(5); 12 C.F.R. § 1024.41(g). *See Weisheit v. Rosenberg & Assocs., LLC*, No. JKB-17-0823, 2017 WL 5478355, at *6 (D. Md. Nov. 15, 2017) (finding that the plaintiff stated a claim for a violation of § 1692e where she alleged that the defendant scheduled a foreclosure sale of her property and notified her of the sale before it completed the loss mitigation procedures under RESPA); *Farber*, 2016 WL 5867042, at *6 (finding that the plaintiffs stated a claim for a violation of § 1692e(5) where they alleged that the defendant scheduled a foreclosure sale before it had finished evaluating their loss mitigation application).

Cooke also alleges that Carrington violated § 1692e(5) by threatening to foreclose before it was permissible under the deed of the trust. Specifically, Cooke asserts that her mortgage was insured by the Federal Housing Administration ("FHA") and that the deed of trust thus required the lender or servicer to hold a face-to-face meeting with her before filing a foreclosure action. Cooke further alleges that neither Carrington nor any other entity attempted to conduct a face-to-face meeting with her before it threatened, filed, and scheduled a foreclosure sale. These allegations are sufficient to state a claim for a violation of § 1692e(5).

Cooke relies on the same conduct to assert a violation of § 1692e(10), which prohibits "the use of false representations or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Threatening and scheduling a foreclosure sale before a foreclosure sale was

permitted by the deed of trust could be considered a "false representation" in violation of this provision. *See Weisheit*, 2017 WL 5478355, at \*6. Therefore, Cooke also states a claim for violation of § 1692e(10) based on this conduct.

## C.    Section 1692f(6)

The Second Amended Complaint also alleges violations of 15 U.S.C. § 1692f(6). That section prohibits, in relevant part, "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6). Cooke's amended § 1692f(6) claims are identical to her amended § 1692e(5) claims. That is, she alleges that Carrington violated § 1692f(6) by threatening foreclosure and scheduling a foreclosure sale before such a sale was permitted by Maryland law, RESPA, and the deed of trust. This alleged conduct could also constitute a violation of this provision. *See Weisheit*, 2017 WL 5478355, at \*6–7 (finding that the plaintiff stated a claim for violations of § 1692e and § 1692f(6) where she alleged that the defendant scheduled a foreclosure sale of her property and notified her of the sale before it completed the loss mitigation procedures under RESPA); *Farber*, 2016 WL 5867042, at \*6 (holding that "the scheduling and advertising of a foreclosure sale at [a] time when there was no legal right to conduct the sale could also violate 15 U.S.C. § 1692f").

Carrington argues, however, that Cooke's § 1692f(6) claims must be dismissed because they are based on the same conduct that underlies her § 1692e(5) claims. The Court previously dismissed certain § 1692f claims because they were duplicative of other FDCPA claims. *See Cooke*, 2018 WL 6323116, at \*6. Some courts have held that a § 1692f claim duplicative of other FDCPA claims need not be dismissed if it alleges a violation of one of the enumerated provisions such as § 1692f(6). *See, e.g., Weisheit*, 2017 WL 5478355, at \*7 ("Section 1692f is a catch-all

11

that can only serve as the basis for liability when a debt collector has not violated any other provision of the FDCPA, *unless* a plaintiff alleges that a debt collector engaged in conduct explicitly prohibited in Section 1692f's list."); *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (observing that there is a "growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA"). However, the United States Court of Appeals for the Fourth Circuit has yet to draw that distinction. *See Lembach*, 528 F. App'x at 303–04 (dismissing the plaintiffs' § 1692f claim where it was based on the same conduct underlying their § 1692e claim). Accordingly, the Court will grant Carrington's Motion to Dismiss Cooke's § 1692f(6) claims.

## III.  MCDCA

In Count Two, Cooke asserts additional bases for liability against Carrington under section 14–202(8) of the MCDCA. That section provides that, "in collecting or attempting to collect an alleged debt," a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14–202(8). Cooke's additional theories for liability under the MCDCA mirror those for liability under the FDCPA in that she alleges that Carrington violated section 14–202(8) by: (1) "claiming and threatening to accelerate and sell the Property after 45 days elapsed from December 22, 2015, when [it] knew it could not conduct a foreclosure sale because it had not even yet filed the foreclosure action"; (2) "claiming, attempting and threatening to foreclose on [her] Property when [Carrington] knew it did not comply with all conditions precedent—attempting to hold a face-to-face meeting—in the [deed of trust], and had no right to initiate foreclosure"; and (3) "threatening to hold a foreclos[ure]

auction sale without acting on Plaintiff's loss mitigation application that [Carrington] received well-over 37 days prior to the date of the scheduled foreclosure auction sale." Second Am. Compl. ¶¶ 86–88.

Carrington argues that Cooke's MCDCA claims should be dismissed because Cooke does not dispute the validity of the underlying debt. The MCDCA, however, "focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012), *aff'd*, 574 F. App'x 278 (4th Cir. 2014); *see also Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731–32 (D. Md. 2011) (stating that the MCDCA "prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a *delinquent* debt") (citation omitted) (emphasis added). Accordingly, a borrower need not contest the validity of the underlying debt in order to state a viable claim under the MCDCA. *See, e.g., Bradshaw*, 765 F. Supp. 2d at 723, 732–33 (holding that the defendant violated section 14–202(8) of the MCDCA when it attempted to collect a defaulted debt without the required state license); *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 198 A.3d 879, 888 (Md. Ct. Spec. App. 2018) (finding that plaintiffs stated a claim for a violation of section 14–202(8) of the MCDCA where they acknowledged that they owed several months of delinquent assessment fees but challenged the defendant's "methods in filing liens"); *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4295048, at *10 (D. Md. Aug. 29, 2014) ("For purposes of Section 14–202(8), whether the [plaintiff's] Loan was in default is beside the point; even assuming the loan was in default, if the debt collector went about collecting the debt in the wrong way, it violates the law.").

Carrington further argues that Cooke's additional MCDCA claims should be dismissed because she does not plausibly allege that Carrington "had *knowledge* that it had no right to proceed

with a foreclosure sale." Mot. Dismiss at 11–12. This argument is also unavailing. The "knowledge" requirement of the MCDCA refers to "actual knowledge or reckless disregard as to the falsity of the information or the existence of the right." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999). Here, where Cooke alleges that Carrington was the servicer of her mortgage loan and sent her notices claiming knowledge of the status of her debt and describing her legal rights, it is reasonable to infer that Carrington had knowledge of the terms of the deed of trust and the applicable legal requirements. Cooke also asserts that she challenged the legality of Carrington's scheduling of the foreclosure in light of her pending loss mitigation application. Moreover, although the Court can plausibly infer that Carrington, a mortgage servicing company, knew the requirements for foreclosure under Maryland law and RESPA, any lack of knowledge due to mistake of law would not save it from liability under the MCDCA. *See Fontell*, 870 F. Supp. 2d at 407 ("[If] Defendants' ignorance ... was a mistake of law, their professed lack of knowledge would not save them from liability under the MCDCA."); *Spencer*, 81 F. Supp. 2d at 594 (holding that "the term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law"). Accordingly, Cooke has plausibly alleged facts supporting an inference of "actual knowledge or reckless disregard" of the illegality of foreclosure at the time that Carrington threatened and scheduled a foreclosure sale. *Spencer*, 81 F. Supp. 2d at 595.

Therefore, the Court denies Carrington's Motion to Dismiss Cooke's amended MCDCA claims. In addition, because Count Three of the Second Amended Complaint asserts claims under the MCPA based on violation of the MCDCA, that count also stands. *See* Md. Code Ann., Com. Law § 13–301(14)(iii) (stating that a violation of the MCDCA is a *per se* violation of the MCPA).

## IV.    RESPA

In Count Four of the Second Amended Complaint, Cooke asserts an additional basis for liability against Carrington under RESPA.   Specifically, she alleges that Carrington "violated § 2605(f) by scheduling a foreclosure sale without acting on Plaintiff's loss mitigation application that was sent more than 37 days prior to the scheduled foreclosure auction sale."   Second Am. Compl. ¶ 109.   Carrington argues that this allegation should be stricken because the Court did not dismiss any of Cooke's RESPA claims in its prior Memorandum Opinion, such that it is outside the scope of the Court's order granting Cooke leave to file a Second Amended Complaint.

Carrington is correct that Cooke's additional basis for liability under RESPA is outside the scope of the Court's order granting Cooke leave to file a Second Amended Complaint.   That order provided that "[t]he amendments shall be limited to the counts that were dismissed in the Court's December 3, 2018 Memorandum Opinion and the deficiencies identified therein."   ECF No. 39. However, this RESPA claim parallels Cooke's amended FDCPA and MCDCA claims and was filed before the deadline for motions to amend the pleadings.   Furthermore, the Court has considered an argument for dismissal offered by Carrington that was outside the scope of the Court's order of January 9, 2019.   *See supra* Section II.A.   Under these circumstances, the Court will allow the additional RESPA claim to stand rather than require Cooke to file another motion for leave to amend the complaint.

## CONCLUSION

For the foregoing reasons, Carrington's Motion to Dismiss is GRANTED IN PART and

DENIED IN PART.  It is granted as to the FDCPA claims under 15 U.S.C. § 1692f(6) and is

otherwise denied.

Date:   July 17, 2019



THEODORE D. CHUANG
United States District Judge